19603.   BUCHANAN *et al.* v. TESLER.

DECIDED JUNE 11, 1929.

*McElreath & Scott,* for plaintiffs in error.
*George & John L. Westmoreland, J. M. Jones,* contra.

LUKE, J.   J. A. Tesler brought·an action for damages against Mrs. T. T. Buchanan and Mrs. T. T. Brannen, alleging in substance as follows:

1.   Defendants are residents of Fulton county, Ga.

2.   Defendants have damaged plaintiff in the sum of $10,000.

3.   On January 1, 1925, plaintiff leased from defendants a storehouse in the City of Atlanta, known as 20 West Mitchell Street, for five years, at a rental of $300 per month.

4.   Plaintiff rented said property for his own use, and was conducting therein a profitable. retail clothing business.

5.   "The defendants were sisters of one M. L. Thrower, and he was the owner of several store-houses lying next west of the premises leased by the plaintiff, except the one immediately west and adjoining it, and he owned the west half of that store, the east half being the property of the plaintiff's lessors."

6.   Plaintiff's lessors and said Thrower inherited their property,

"and the store-house occupied by the plaintiff and the store next adjoining it on the west was all one building and covered by one roof," but said parties had partitioned said building, and "in the division the said Thrower obtained title to the west half of the store-house, and the plaintiff's lessors obtained title to the east side."

7. Between the store-house leased by plaintiff and the one owned by said Thrower "there was no brick or other substantial partition, but the same was constructed with what is known as beaver-board and covered by paper."

8. During the month of February, 1926, while plaintiff was occupying the store leased from the defendants and doing a profitable business therein, said Thrower "tore down and removed the brick wall along the west side of said property, and sawed in two the store-house next west of the store leased by the plaintiff, and tore away the entire west half thereof, and left no protection for the plaintiff's property from rains or storms, except the flimsy beaver-board wall."

9. Plaintiff immediately notified defendants of the unsafe condition of said premises, and asked that his stock of goods be protected from damage, but "defendants failed and refused to make such alterations and repairs in the said premises as to protect the plaintiff's stock of goods."

10. "In consequence of the said exposed condition, rains and storms came and greatly damaged your petitioner's stock of goods as follows:" men's clothing in the sum of $5,600.63; ladies' dresses, in the sum of $412; and ladies' hats in the sum of $28; and plaintiff was otherwise damaged, inconvenienced and annoyed to the extent of $3,959.47,—"all of which damage was caused by the rains and storms aforesaid by reason of the fact that the defendants failed and refused to erect a substantial wall and roof for the protection of plaintiff's property."

11. "It was the duty of the defendants, as the plaintiff's landlords, to protect his stock of goods by erecting and providing such walls and roof, or other devices, as would have kept out the rains and storms which damaged the plaintiff's stock of goods as aforesaid."

The defendants demurred to the petition: (1) because it set forth no cause of action against them or either of them; (2) "because the lease referred to in paragraph 3 of said petition is not

set forth in said petition and no copy thereof is attached thereto." After a copy of said lease had been attached to the petition, to meet the special demurrer, the court, on April 6, 1928, "adjudged that the demurrer be sustained and plaintiff's petition dismissed." On April 24, 1928, the court passed the following order: "Wherefore the order of April 6, 1928, dismissing plaintiff's petition is revoked and plaintiff's case is reinstated in said court; and the attached amendment is allowed and ordered filed subject to objection and demurrer on the part of the defendants."

The substance of said amendment follows: 1. "The damage to plaintiff's goods was caused by water entering the store-room by reason of the roof being out of repair." It was the duty of the defendants, under the lease contract, to repair the roof, and the damage complained of "was the direct result of defendants' failure to repair the roof so as to make it serve the purpose of a roof." 2. "Defendants knew that M. L. Thrower was razing the adjoining building, and that a beaver-board wall would remain as an outside wall, and would be wholly inadequate to protect plaintiff's goods from the elements; defendants knew that a wide gap would result between the roof and the wall of their building, due to M. L. Thrower tearing away his adjoining building; and defendants made no effort to protect plaintiff's goods, though they knew that plaintiff's stock was being endangered by reason of the adjoining building being torn away." 3. "That defendants knew, or had reason to believe, that the roof of their building would subside and sink by reason of its support being taken away; that said roof did subside and cause water to pour into the store and on plaintiff's goods, and this damage was entirely due to defendants' failure to repair and support its roof." 4. "Plaintiff notified the defendants of the activities of Thrower and that damage would result to plaintiff, and the defendants refused to do anything to protect plaintiff's goods," said notice having been given in ample time. 5. "Even if the original defective condition of defendants' building was caused by the acts of M. L. Thrower and by defendants' failure and refusal to repair the roof and make structural replacements after due notice, the act was thereby adopted by the defendants as their own, and through their failure and refusal to perform their covenant to repair the roof."

The defendants admitted paragraphs 1, 5, 6, and 7 of the peti-

tion, and denied paragraphs 2, 9, 10, and 11; denied the allegations of paragraph 3, but admitted the execution of the lease referred to therein and averred that it was executed on April 28, 1924, and that plaintiff entered into possession of said property on or about the beginning of his term, which was January 1, 1925; admitted paragraph 4 of the petition, except that, for want of information, they could neither admit nor deny that plaintiff was conducting a profitable business in said leased premises; and admitted the allegations of paragraph 8, except that they averred that the demolition referred to therein occurred in or about the latter part of April, 1926. The defendants further pleaded in substance as follows: that plaintiff entered into the possession of said rented premises on or about January 1, 1925, and ever since remained in possession thereof; that the express terms of said lease contract relieved the lessors from all damage to person and property; that said contract expressly provided that the lessors should not make repairs of any nature during the term of the lease, except repairs to the roof; that the roof of the leased premises was in good repair, and that if any water entered the premises, it did not enter through the roof or by reason of any defect therein; that defendants were not notified to make any repairs to the roof; and that, by reason of the facts set out, defendants were not liable even if plaintiff's goods were injured by water entering said premises. Defendants further pleaded that they were not liable, for the following reasons: that the entire property from Forsyth street east to a point some twenty feet east of the wall of the store leased to plaintiff was inherited by defendants and M. L. Thrower from their father several years before said lease contract was made; that said property was covered by a two-story brick building which was divided into store-rooms fronting on Mitchell Street, and was held by defendants and said Thrower as tenants in common; that prior to the execution of said lease, the entire property was partitioned, the eastern portion of said property occupied by the store-room known as "No. 20 West Mitchell Street," and the eastern half of the store-room known as "No. 22 West Mitchell Street," being awarded to defendants as tenants in common, and the western portion of said property, including the western half of the store-room known as "No. 22 West Mitchell Street" being awarded to M. L. Thrower; that all of said property was covered by one roof; that after said division a beaver-

board partition was run down the middle of store-room "No. 22" at the common expense of defendants and said Thrower, dividing it into two rooms, the eastern one being the property of defendants, and the western one the property of said Thrower; that during the latter part of April, 1926, said Thrower, without notice to the defendants, and without their knowledge, and without a permit from the City of Atlanta, demolished the building on his portion of said partitioned property, cutting in half said store-room "No. 22," and leaving defendants' property unprotected, except by the beaver-board partition which was on the dividing line; that at said time Mrs. Brannen was residing in Cuba; that soon after said demolition Mrs. Buchanan was notified of it, and, though she was under no legal obligation so to do, she repaired said beaver-board partition; that as soon as she could, she made arrangements to build, and did build, a brick wall where the beaver-board wall had stood; that until said Thrower demolished his portion of said building, the premises occupied by plaintiff were in good condition and fully protected from rain and leakage; that after said demolition, and before defendants could complete the new wall, excessive rain-storms, accompanied by high winds, came, and defendants are informed that a very small amount of rain blew through said beaver-board wall and onto the floor of the upper story of store-room "No. 22 West Mitchell Street," and ran down the wall of "No. 20 West Mitchell Street," damaging plaintiff's goods in an amount not exceeding $15, defendants averring that said damage could have been prevented by plaintiff at practically no expense, by removing his clothes-racks from against the west wall of his store; that the sole cause of any damage sustained by plaintiff was the demolition by said Thrower of his portion of said building; that defendants were powerless to prevent it; that being without notice of said demolition, defendants were unable to provide against the creation of the condition produced by the same, and that the unprotected condition of defendant's property was brought about by a vis major; that the rains and storms, occurring before they could be provided against, were acts of God, for the consequences of which defendants are not legally liable; "that from the partition of said property, the respective owners owed a servitude to the other adjoining owners for the protection of each portion of the building to the other portion, and that neither owner had a right to demolish his portion of

said building without affording protection to the portion of said building owned by the others, and if any body is liable to plaintiff, it is M. L. Thrower, who caused said damage; that defendants are not liable to the plaintiff in any sense whatever; that M. L. Thrower has been duly vouched into this case," and defendants pray, "if any recovery be had in said case, that said M. L. Thrower be held liable therefor." On motion the court struck the paragraph of the answer which prayed that M. L. Thrower be held liable for any damages that might be recovered against the defendants.

J. A. Tesler testified that he went into possession of the leased premises in January, 1925, and was conducting therein a ladies' and men's ready-to-wear business; that he occupied the first floor, but did not rent the second story; that up to the time M. L. Thrower removed the building west of him, his store was protected from the weather; that about February, 1926, Thrower began tearing down the part of the building to the west of the store occupied by witness; that each of his lessors was present several times during the demolition of said building; that Thrower began tearing down the building in February, "and it took about a week or two when he started over on my side;" that he immediately notified his lessors to give him some kind of protection; that about nine feet of the store immediately west of the one occupied by plaintiff (i. e. the half of that store that belonged to defendants) was not torn down, and his wall was not "right open to the elements then;" that his lessors put the brick wall up probably four weeks after witness's second damage; "that the first damage came on Saturday, June 19, and the second damage came on Tuesday of the following week;" that he could not tell whether the roof was fixed or not, because he had never been on the second floor to find out, but that he supposed it was fixed after the water came in; that after the wall was fixed he did not have any more trouble; that he notified Mrs. Buchanan on June 19, and she reached his store at about six or seven o'clock p. m. the same day; that the rains that caused the damage were ordinary rains unaccompanied by violent winds; that "the water came through the ceiling, straight out at one time, in one lump, and sprinkled over the hats in the middle of the store, and sprinkled over the dresses eighteen feet further out from the wall;" that it was from the ceiling, not from the wall; that there was some paper off the ceiling; and that his goods were damaged,

C. W. McClure, sworn for plaintiff, testified: that he did not know whether he was in plaintiff's store Tuesday or Saturday; that he thought there was a summer shower falling, and was inclined to think that there was wind just before the rain; that water came dripping down, but that he did not know where it came from; and that plaintiff got busy getting his goods out of the west side and from under the rain. Ben Levine sworn for plaintiff, testified that he was in plaintiff's store on a Saturday in 1926, and saw some water on the floor; that the ceiling was wet, but he could not tell how much of it; and that perhaps two or three yards of the ceiling had loose paper on it. John W. Hardwick, sworn for defendants, testified: that he was with the Federal Loan Company in 1926, and that he was in plaintiff's store on a Thursday; that the only evidence he saw of water coming in the store was that some had trickled down the wall, and that he saw "no broken place in the ceiling." This witness thought that if the damaged goods had been dried out and pressed, they might have sold at a discount of twenty-five per cent.

Mrs. T. T. Buchanan testified: that she was one of the defendants; that the other defendant, her sister, Mrs. Brannen, was in Havana, Cuba, at the time of the rain; that in response to a telegram from Mr. Tesler (the telephone being out of order because of the windstorm and rain that day) she went immediately to the store; that the wind was blowing very hard, this way and that way, coming in gusts, and that it was still raining when she reached the store; that Mr. Tesler told her "that the rain had come down the side of the wall there and wet some of the suits on the shelves;" that she looked at both the wall and the ceiling, and that the rain had come down the side of the wall next to the little shoe store that was between him and the place where Mr. Thrower tore the building down, and "not over in the middle of the store;" that she had nothing to do with tearing down the wall, and knew nothing about it until Mr. Thrower called her up to go down and build a wall; that when she went down next day she found that he had torn down his half of the store they owned together; that on Monday she sent a carpenter to see about the roof; "that there was no leak in the roof at all," and that it never had leaked; that she built the wall as soon as possible, but that it took several weeks to do it; she knew that Mr. Thrower was tearing down buildings on his

property but she did not know that he was going to tear away his half of the store that he and defendants owned together—that this was the last thing he did; and that the damage was small. Mrs. T. L. Thrower, sworn for the defendants, testified that she was the mother of defendants, and went to the store of Mr. Tesler with Mrs. Buchanan on the night of the rain; that there was a hard storm and the wind was blowing in every direction; that the streets were flooded; that the water "seemed to blow in from the side; that the water did not come through the ceiling, but trickled down the side; and that the goods were only wrinkled." J. A. Tesler, recalled, testified that he did not think it was raining at all when the ladies came to his store in answer to his call; that there was no water coming in the store at that time; and that his goods were positively wet. This witness further swore: "I notified these people to come there and fix that house; I asked them to fix the wall. I asked Mrs. Buchanan to make the repairs; I asked Mrs. Buchanan to fix the wall; I didn't ask for the roof itself." The defendants then offered in evidence the declaration filed by J. A. Tesler against M. L. Thrower, seeking damages for the same injuries set out in this case. Three photographs were then introduced in evidence, one showing the appearance of the building after Thrower had cut in half the store immediately west of the one occupied by plaintiff, and the other two giving views of the interior of the store occupied by Tesler.

The jury found a verdict for the plaintiff for $750, and the court overruled defendants' motion for a new trial.

It will be observed that by his amendment to meet defendants' general demurrer the plaintiff planted his case upon the proposition that the alleged damage "was the direct result of defendants' failure to repair the roof so as to make it serve the purpose of a roof;" and that the roof "subsided" because its support was taken away. So far as we have been able to ascertain from a careful study of the record, it does not appear either that the roof subsided, or that it leaked. Paragraph 3 of the lease contract reads: "Lessee hereby releases lessor from any and all damage to both person and property and will hold the lessor harmless from all such damages during the term of this lease." Paragraph 13 of said contract is: "It is agreed that lessor is to be called on to make no repairs of any nature whatsoever during the term of this lease, except repairs to roof."

We think that the plain provisions of the lease-contract, applied to the evidence in this case, preclude a recovery. Therefore the court erred in overruling the general grounds of the motion for a new trial. The special grounds of the motion for a new trial raise no questions that are of special interest, or that will likely recur, and it is not necessary to pass upon them at this time.

*Judgment reversed. Broyles, C. J. and Bloodworth, J., concur.*