32210.   SAMPSON *et al. v.* GENERAL ELECTRIC SUPPLY CORPORATION.

Decided November 11, 1948.

4

*Smith, Partridge, Field, Doremus & Ringel,* for plaintiffs in error.

*Harry S. McCowen,* contra.

SUTTON, C. J. (After stating the foregoing facts.) ■ In special ground 4 of the defendants' motion for a new trial error is assigned on the action of the court in excluding the evidence of John C. Ballard, who was in charge of the weather bureau at the Atlanta airport, and whose testimony was offered by the defendants. This witness testified that, according to his records, there was 1.67 inches of rainfall between 3:57 and 5:40 p. m. on August 8, 1947, at the airport, that it was a thunderstorm type of rain, that the rainfall was exceptionally heavy between 4:30 and 5:30, and was considerably above the average. He testified at length, using data from his records, as to the rainfall on prior occasions, and as to other items of weather information. However, he estimated that the distance from the defendants' warehouse to the airport was about 7 miles, and testified that proof of rainfall at the airport was no proof whatever of rainfall at the warehouse at the time in question, and that he had no idea how much it rained at the Candler warehouse on that afternoon. The plaintiffs in error contend that the testimony of this witness would have corroborated the nonexpert testimony of both the plaintiff's and defendants' witnesses that there was a heavy rainstorm at the Candler warehouse area on the afternoon of the occurrence about which the suit was brought, and that there was a heavy rainstorm condition in and around the Atlanta area that afternoon; that said evidence would have supported defendants' contention that there was a violent and unusual storm of wind and rain in the Atlanta area which caused an overflow of water into the leased premises; that said expert testimony, along with the testimony of the nonexpert witnesses of plaintiff and defendants that there was an unusually heavy rain in the Atlanta area and that said premises had not theretofore overflowed, would have justified a jury in finding for defendants on the theory that plaintiff's damages were caused by an extraordinary and unusual occurrence for which defendants would not be liable, which is in accordance with defendants' special plea in this respect. Mr. Ballard was a weather expert, in charge of the weather bureau at the Atlanta airport, and the main contention of the plaintiffs in error with respect to his testimony is that it would have corroborated the

testimony of the witnesses both for the plaintiff and defendants that there was a heavy rainstorm at the Candler warehouse on the afternoon in question. On the contrary, this witness testified that he had no idea how much it rained at the Candler warehouse at the time in question, and that the record of the rainfall at the airport (where the record was made) was no proof of the rainfall at the warehouse at the same time. In these circumstances the trial judge did not err in excluding the testimony of Mr. Ballard.

■ In special ground 5 of the motion it is alleged that the court erred in failing to charge the jury with respect to paragraph 6 of the lease contract, which was pleaded by the defendants in their answer, the same being as follows: "Lessee covenants and agrees that it will protect and save and keep the lessor forever harmless and indemnified against and from any penalty or damage or charges imposed for any violation of any laws or ordinances, whether occasioned by the neglect of lessee or those holding under lessee, and that lessee will at all times protect, indemnify and save and keep harmless the lessor against and from any and all loss, cost, damage or expense, arising out of and from any accident or other occurrence on said premises, causing injury to any person or property whomsoever or whatsoever and will protect, indemnify and save and keep harmless the lessor against and from any and all claims and against any and all loss, cost, damage or expense arising out of any failure of lessee in any respect to comply with and perform all the requirements and provisions hereof." This was not error, because the provisions of this paragraph of the lease were not applicable under the facts of this case. It was provided in paragraph 4 of the lease contract that the lessor shall keep the sewer system in good order, and it is alleged and contended by the plaintiff in this suit that its damage resulted from the failure on the part of the defendants to keep the sewer system in good order, as they obligated themselves to do. This was denied by the defendants, and both parties submitted evidence to sustain their different contentions in this respect. The provisions in paragraph 6 of the lease, (1) that lessee would save and keep the lessor harmless from any damages, etc., on account of any violation of any law or ordinance by the lessee, and (2) that lessee would save and keep the lessor harmless from any damages, etc., on account of any accident or other occurrence

on said premises, and (3) that lessee would save and keep the lessor harmless from any damages or claims, etc., for failure of lessee to comply with terms of the lease, did not operate to relieve the defendants from liability for damages sustained by the plaintiff on account of their failure to keep the sewer system at the warehouse in good repair as they contracted and obligated themselves to do in paragraph 4 of the lease. However, if it could be said that the provisions in paragraph 6 of the lease are in conflict with the provisions contained in paragraph 4 thereof, then in construing the lease contract the former paragraph should prevail over the latter. Code, § 29-109; *West* v. *Randle,* 79 *Ga.* 28, 32 (3 S. E. 454) ; *Whitney* v. *Hagan,* 65 *Ga. App.* 849, 852 (16 S. E. 2d, 779). But it is clear from the lease that the lessor was to keep the sewer system at the warehouse in good repair. Code § 20-702 provides: "The cardinal rule of construction is to ascertain the intention of the parties. If that intention be clear, and it contravenes no rule of law, and sufficient words be used to arrive at the intention, it shall be enforced, irrespective of all technical or arbitrary rules of construction." Also, see Code, § 20-704, paragraphs 4 and 5. In the case of *Buchanan* v. *Tesler,* 39 *Ga. App.* 799 (148 S. E. 614), cited and relied upon by the plaintiffs in error, the plaintiff based his case on the proposition that his alleged damage was the direct result of the defendants' failure to repair the roof of the building and that the roof subsided because its support was taken away. The court stated that the record failed to show that the roof either subsided or leaked. The lease provided that the lessor was not to make any repairs of any nature during the term of the lease, except repairs to the roof. The court held that the provisions of the lease contract to the effect that the lessee released the lessor from any and all damages during the term of the lease, as applied to the evidence in that case, precluded a recovery by the plaintiff. That case is distinguishable on its facts from the one at bar and does not authorize or require a different ruling from the one here made in the present case. The trial judge did not err in failing to charge the jury as complained of in ground 5 of the motion.

It is contended in ground 6 of the motion that the court erred in failing to charge the jury on the contention pleaded by defendants as follows: "A violent and unusual storm of wind

and rain caused an overflow of water into the leased premises, which damaged the plaintiff's merchandise and defendant is not liable to plaintiff on account of damage to merchandise caused by such an extraordinary and unforeseen occurrence." This plea, in order to be a defense to the action, must be construed as a plea that the wind and rain were an "act of God," such as would relieve defendants from liability. An "act of God," in order to constitute a defense, must exclude the idea of human agency. "An ordinary freshet is not the act of God, in a legal sense which protects a man against the responsibility for the nonperformance of a contract." *Doster* v. *Brown*, 25 *Ga.* 24, 26 (71 Am. D. 153); *Central of Ga. Ry. Co.* v. *Hall*, 124 *Ga.* 322 (8) (52 S. E. 679, 4 L. R. A. (N. S.) 898, 110 Am. St. R. 170, 4 Ann. Cas. 128); *Brawner* v. *Douglas County*, 50 *Ga. App.* 328 (177 S. E. 923). "The term 'act of God' in its legal sense applies only to events in nature so extraordinary that the history of climatic variations and other conditions in the particular locality affords no reasonable warning of them." Vol. 2, Words and Phrases, Perm. Ed., "Act of God," p. 171. Witnesses for both plaintiff and defendants testified that the sewer in question was partially stopped up, that the water was not passing through it as it normally did, and that large quantities of debris were cleaned out of it after this rain, and that previously there had been other rains there about as heavy as the one on the afternoon of August 8, 1947. The evidence in the present case, as to the rain, was not sufficient to authorize a jury to find that the rain was an "act of God," in the legal sense of this term, and the trial judge did not err in failing to charge the jury as contended in ground 6 of the motion.

The verdict was authorized by the evidence, and the court did not err in overruling the defendants' motion for a new trial.
*Judgment affirmed. Felton and Parker, JJ., concur.*