73057. MODLIN v. SWIFT TEXTILES, INC. et al.
73058. BLACK & DECKER, INC. v. POTTER-SHACKLEFORD
CONSTRUCTION COMPANY, INC.
(350 SE2d 273)

BIRDSONG, Presiding Judge.

Summary Judgment — Workers' Compensation — Third-Party Tort Liability. Prior to April, 1981, Swift Textiles, Inc. (Swift) contracted with Potter-Shackleford (Potter) as general contractor to build a denim manufacturing plant and distribution center. Swift retained Lockwood-Greene Engineers, Inc. as the architect-engineer for the plant. Part of that plant involved the installation and use of an air conditioning system. This system was designed to be a draw-through system. Potter as general contractor subcontracted the air conditioning work to Bahnson Service Company. The plaintiff-appellant Jerry Modlin (Modlin) was an employee of Bahnson. After the work commenced, certain change orders were initiated involving Bahnson's subcontract. This change order involved the transfer of design responsibility from Lockwood-Greene to Bahnson to use a blow-through system in lieu of a draw-through system. This change required Bahnson to size and locate floor openings through which the air conditioning ducts would pass. The design responsibility apparently included the equipment installation in the basement level as well as the first-floor level as well as determining size and location of openings or floor holes between the two areas. These openings designed by Bahnson were very similar to those planned in the original air conditioning by Lockwood-Greene.

On April 6, 1981, Modlin was standing on a "jerry built" scaffolding on the first floor level some ten to twelve feet above the floor level engaged in drilling work involving the air conditioning system. While standing on the scaffolding, he suffered a strong electrical shock apparently caused by a wiring defect in the drill manufactured by Black & Decker (U. S.), Inc. This strong shock caused Modlin to fall off the scaffolding backward through a hole in the first floor level (through which the air conditioning was designed to pass) onto the basement floor some thirty to forty feet in total distance.

It was not disputed that the opening between the basement and upper level was used not only as passage for the air conditioning ducts and for access of materials into the basement but was also the point at which all debris and excess material in the basement were removed to the outside area. Normally an opening of this size and with this use would be protected with handrails around its perimeter as opposed to a physical cover over the opening. Both methods were alleged without contradiction to be acceptable under OSHA procedures. The particular opening through which Modlin fell as well as the other openings similar to it involving the other air washers were

protected with handrails as opposed to covering. The contract required Bahnson to supervise the openings to see that the openings (and the employees) complied with all OSHA requirements including proper staging for their workmen. It was asserted that the opening for practical reasons could not be covered but OSHA standards were met by the handrail completely surrounding the opening's perimeter. It was further alleged that the contract required the particular contractor creating debris to clean it up. At the time of the accident involved, debris had been cleaned and moved from points all along various tunnels in the basement area to the area immediately under the shaft opening. From this location, it was moved periodically from the basement to the ground floor level where disposition was effected. The significance of cleaning responsibility is apparent in view of the fact that Modlin fell upon debris in the basement level resulting in permanent injury to his spine.

Modlin filed for and received workers' compensation benefits from his employer Bahnson. Eventually Modlin brought a third-party tort action against Black & Decker as manufacturer of the electric drill being used by Modlin alleging that the drill was not merchantable nor fit for the purpose for which it was designed. It was alleged that Potter was negligent in its design of the work and supervision and safety inspections. It was alleged that Swift as owner likewise was negligent in its supervision, design and safety precaution of the building of which it was the owner thus failing to provide safe working conditions. Finally, Modlin alleged that Lockwood-Greene failed to design the plant and more particularly the air conditioning system properly. By consent of all parties, Lockwood-Greene was dismissed as a party defendant. Black & Decker, Potter, and Swift all filed cross-actions as third-party plaintiffs seeking contribution from the other defendants should they be found liable to Modlin. Potter and Swift moved for summary judgment against Modlin and against each other on the cross-complaint for contribution. The trial court granted Potter and Swift summary judgment. Modlin filed his appeal in case no. 73057 complaining of the grant of summary judgment to Potter and Swift. Black & Decker filed an *amicus* brief in support of Modlin's appeal. Black & Decker filed a cross-appeal (case no. 73058) complaining of the grant of summary judgment to Swift and Potter against Black & Decker as to Black & Decker's cross-complaint for contribution against Swift and Potter. *Held*:

1. The contract between Swift and Potter called for the construction of a textile manufacturing plant of approximately 250,000 square feet. The contractor was to supervise and direct the work, being responsible for construction means, methods, techniques, sequences and procedures and for coordinating portions of the work under the contract. The contract provided that the contractor (Potter) would be

responsible for the acts and omissions of subcontractors, agents and employees. The contract also required the contractor to keep the premises free of accumulation of waste materials or rubbish. The contractor was also required to erect or maintain as required by existing conditions and progress of the work all reasonable safeguards for safety and protection. It was asserted and shown that Swift's representatives visited the job for the purpose of seeing that the job was coming along on schedule; checking the schedule for timely and proper installation of equipment; ascertaining that Potter was doing a "quality job" and expressing preferences in matters such as paint colors, designs and hanging of lights and finish on the floors, etc. Swift asserted without contradiction that it did not seek to control the work except to the extent that it tried to meet the completion date. Safety precautions on the part of Swift amounted to observations and comments by Swift if a representative observed something that was a wholly unsafe practice in which case the observation would be brought to the attention of Potter. However, Swift did nothing to direct or control construction of the building.

Based on this statement of facts, Modlin and Black & Decker contend that Potter was required under the contract to promulgate and carry out safety procedures and enforcement including covering of the air conditioning holes and clean up of materials, both of which were directly involved in the injury to Modlin. Both Modlin and Black & Decker also contend that Swift as owner had assumed inspection responsibility and was negligent in the exercise of that assumed duty and thus negligently failed to provide a safe place in which to work.

In relation to the asserted liability of Swift as being negligent in the exercise of its assumed safety duties, we conclude that the contention of asserted negligence is the same contention as rejected by the holding of this court in *Bryant v. Village Centers*, 167 Ga. App. 220-223 (305 SE2d 907). Inasmuch as the same type of contract involving the self-same language contained in the contract in this case was involved in *Bryant*, supra, we may legitimately substitute names in this case for names appearing in the *Bryant* case. When this is done, it becomes clear that *Bryant*, supra, controls the resolution of the summary judgment involving Swift. Making the substitutions above mentioned, the *Bryant* case would read insofar as pertinent to this appeal as follows: "Appellant [Modlin] is an employee of [Bahnson]. At all times relevant to the instant appeal, [Bahnson] was an independent subcontractor in the employ of [Potter]. [Potter] was the general contractor for the construction of a [textile plant] owned by [Swift] . . . .

"While engaged in his employment with [Bahnson] on the [textile plant] project, appellant [Modlin] fell and sustained severe per-

sonal injuries. Appellant received workers' compensation benefits. He . . . subsequently filed suit against the following defendants . . . [Potter], the general contractor; and [Swift], the owner. Appellant [Modlin] sought damages resulting from the injuries he sustained in the fall, alleging, in essence, that all defendants had negligently and carelessly failed to maintain the said premises in a safe condition by failing to provide a secure working area on the elevated mezzanine thereof, failing to provide a safety . . . barrier along the edge thereof . . . .

"In this state the essential elements of a cause of action based on negligence are: (1) *A legal duty to conform to a standard of conduct raised by the law for the protection of others against unreasonable risks of harm*; (2) a breach of this standard; (3) a legally attributable causal connection between the conduct and the resulting injury; and, (4) some loss or damage flowing to the plaintiff's legally protected interest as a result of the alleged breach of the legal duty. [Cit.]" *Bradley Center v. Wessner*, 161 Ga. App. 576, 579-580 (287 SE2d 716) . . . . Accordingly, the issue presented for resolution is which entity or entities associated with the construction project owed the duty of providing employees a safe working environment.

"As noted above, appellant [Modlin] was in the immediate employ of [Bahnson], which was in turn an independent subcontractor of [Potter], the general contractor. [Potter's] contract with [Swift], the owner, provided as follows: [Potter] shall supervise and direct the work using his best skill and attention. He shall be *solely* responsible for all construction, means, methods, techniques, sequences and procedures and for coordinating all portions of the work under the contract. . . . *[Potter] shall take all reasonable precautions for the safety of, and shall provide all reasonable protection to prevent damage, injury or loss to: all employees on the work and all other persons who may be affected thereby . . . [and] shall erect and maintain . . . by existing conditions and progress of the work, all reasonable safeguards for safety and protection,* including posting danger signs and other warnings against hazards, promulgating safety regulations and notifying owners and users of adjacent utilities. It further appears that, under the contract, [Swift] retained or reserved no right or authority over the project for itself or any of its other employees, save only those consistent with the right and authority to require certain definite results in conformity with the contract. It is thus clear that, under the contract, the duty of providing safe working conditions was squarely upon [Potter], the independent contractor, and not [Swift], the owner. See generally *Zurich Gen. Acc. & Liab. Ins. Co. v. Lee*, 36 Ga. App. 248 (1) (136 SE 173). Therefore, assuming compliance with the clear terms of the contract, [Swift], the owner, would not be liable for [Potter's] wrongful or negligent breach of this

duty. OCGA § 51-2-4. . . .

"There is no evidence that, notwithstanding the terms of the contract, [Swift] . . . interfered with the construction project and assumed [Potter's] right to control the time, names and method of executing the work. Indeed, the undisputed evidence conclusively demonstrates that whatever actions [Swift] took with regard to the project were solely pursuant to [its] right . . . to require certain definite results in conformity with the contract. . . . Those actions on the part of [Swift] do not demonstrate that it had ousted [Potter] from its contractual status as an independent contractor and that [Swift] had thereby assumed responsibility for the manner in which the work was done, including responsibility for providing a safe working environment for those employed on the project. [Cit.]

"The evidence is clear that the premises were surrendered to [Potter], that [Potter's] status as an independent contractor was not interfered with by [Swift], that the duty of providing for the safety of workers was accordingly upon [Potter], and that no such duty was owed by any other entity involved in the project. [Cits.] There is no basis in the record which could possibly impose liability upon the employer [Swift] for the alleged negligence of the independent contractor. [Cit.] We have carefully and exhaustively studied the . . . evidence [which we have likewise done in the case sub judice] and find nothing whatsoever which would support a finding that, under the circumstances surrounding the mishap [Swift] owed [Modlin] any duty the breach of which was a proximate cause of the injuries sustained. [Cit.] The trial court did not err in granting summary judgment in favor of [Swift.] [Cit.]. . .

"Under the uncontroverted evidence, the duty the breach of which is alleged to be the negligent act underlying appellants' claims, was a duty owed only by [Potter], the independent contractor. Since the . . . owner did not owe appellant [Modlin] any duty to provide safe working conditions, [Swift] had no liability to appellant."

Our comparison of the contract language in *Bryant*, supra, with that in the present contract discloses the terminology is identical, word for word, in the two contracts. Likewise, the facts show minimal supervision by Swift over the premises and flow of the work product. That specific contract language when viewed in light of the owner's virtual surrender of the premises and work progress to the contractor is the basis upon which this court in *Bryant* concluded that the owner in that case did not assume nor owe any duty of safety rules, regulations or performance to the employee. It follows that the same result must follow as to Swift, the owner, in this case. Accordingly, we find no error in the grant of summary judgment as to Swift.

The reasoning and precedence of *Bryant* also require an affirmance of the summary judgment as between Swift and Black & Decker.

2. The basis for the summary judgment granted to Potter was that Potter stood in the position of statutory employer of Modlin. OCGA § 34-9-8 provides generally that a principal contractor (Potter) shall be liable for compensation to any employee of any of his subcontractors engaged upon the subject matter of the contract to the same extent as the immediate employer where the injury occurs on, in or about the premises on which the principal contractor has undertaken to execute work or which are otherwise under his control or management. Thus it is clear that the principal contractor (Potter) is the injured employee's "statutory employer" for workers' compensation purposes. *Wright Assoc. v. Rieder*, 247 Ga. 496, 497 (277 SE2d 41).

OCGA § 34-9-11 provides that rights and remedies granted to an employee against the immediate employer for workers' compensation exclude all other rights and remedies of that employee at common law or otherwise on account of injury. Thus it has been held repeatedly that this code section grants the injured employee's employer statutory immunity from suit by the employee to recover damages other than workers' compensation benefits. *Blue Bell Globe Mfg. Co. v. Baird*, 64 Ga. App. 347 (13 SE2d 105). *Wright Assoc. v. Rieder*, supra at p. 41, made clear that the statutory immunity from suit includes the statutory employer regardless whether that statutory employer had actually paid the workers' compensation benefits. This conclusion has its genesis in the fact that once a contractor has been determined to be a statutory employer, such an employer cannot be a joint tortfeasor subject to contribution. *Georgia Power Co. v. Diamond*, 130 Ga. App. 268 (202 SE2d 704). Inasmuch as the right of contribution depends upon the status of joint tortfeasor, if the statutory employer is not as a matter of law a joint tortfeasor there cannot be a right of action by the injured employee or by another defendant against an employer as a contributor. *Eschen v. Roney*, 127 Ga. App. 719, 729 (194 SE2d 589).

It is clear that Potter held the same position toward Modlin that Wright Associates held toward Rieder in that case. Potter did not pay Modlin workers' compensation benefits the same as Wright Associates did not pay such benefits to Rieder. Nevertheless, the Supreme Court held that because Wright Associates was Rieder's employer for workers' compensation purposes, it was entitled to the same immunity from suit as Rieder's immediate employer. It follows that as to Modlin, Potter is not liable in a common law tort action. Thus, the trial court did not err in granting Potter summary judgment.

In its cross-appeal, Black & Decker seeks to limit the application of the status of statutory employer including the lack of tort liability to the relationship between employer and employee. It contends that the statutory employer relationship should have no impact as between codefendants and their rights of contribution. The difficulty

with this argument is as previously stated. As a statutory employer, Potter is not a joint tortfeasor within contemplation of law. *Georgia Power Co. v. Diamond*, supra. Inasmuch as Potter and Black & Decker are not joint tortfeasors within the eyes of the law, Black & Decker has no right of contribution against Potter. *Eschen v. Roney*, supra. Thus the trial court did not err in granting Potter summary judgment as against Black & Decker.

3. Potter seeks this court to find the appeal filed by Modlin to be frivolous and desires the assessment of a penalty for frivolous appeal. Modlin premises his appeal on the bare argument that *Wright Assoc. v. Rieder*, supra, is improperly reasoned and reaches an improper result. This is the law as announced by the Supreme Court of this state. Modlin's argument affords little or no basis to reverse the grant of summary judgment as to Potter insofar as Potter is determined to be immune from tort liability because of its status as statutory employer. Potter contends that it had to undergo legal expense to respond to this appeal. However, we note that Black & Decker likewise has filed an appeal to which Potter was required to respond. While Potter may have expended additional effort to respond to the contentions of Modlin, under the circumstances of the appeals and cross-appeals, Potter ostensibly and necessarily was before this court to respond to Black & Decker's appeal. In view of the cross-appeal, we will not assess a penalty against Modlin for seeking relief from the grant of summary judgment as to Potter on somewhat specious grounds. Accordingly, the motion for assessment of penalty against Modlin is denied.

*Judgments affirmed. Banke, C. J., and Sognier, J., concur.*

DECIDED OCTOBER 20, 1986 —
REHEARING DENIED NOVEMBER 3, 1986 ▮

▮

*Paul R. Bennett, Billy E. Moore*, for Modlin.

*Howell Hollis, Richard Y. Bradley, Albert W. Stubbs, John Laney, John W. Denney*, for Swift Textiles.

*Alan F. Herman, Michael A. Cole*, for Black & Decker.

*John W. Denney, Paul R. Bennett, Howell Hollis*, for Potter-Shackleford.