A92A0643. BROOKS v. OIL-DRI CORPORATION OF GEORGIA.
(422 SE2d 22)

COOPER, Judge.

Appellant, a welder employed by Ironwood Construction Company ("Ironwood"), brought suit against appellee to recover for injuries sustained when appellant fell from an elevator on premises owned by appellee. Appellant contended that appellee was negligent in failing to disclose that the elevator was unsafe. The trial court granted appellee's motion for summary judgment and this appeal followed.

Appellee owned and operated a mining business which utilized two vertical bucket elevators. Elevator E-110 was approximately 125 feet high and was adjacent to and connected to elevator E-111, which was approximately 90 feet high. Elevator E-110 was an older piece of equipment which was in place when appellee purchased the property in 1985 and had become difficult to maintain because appellee did not have the equipment to maintain an elevator of that height. Appellee, through its plant manager Dewey McCabe, entered into an oral agreement with Joseph Lacayo, the president of Ironwood, for Ironwood to reduce the height of elevator E-110 by 30 feet. Ironwood had previously dismantled a similar elevator on appellee's property. Before beginning the dismantling, Lacayo and Zendel Vickers, a construction superintendent for Ironwood, examined E-110 to determine the best

way to go about reducing the height. Vickers and Lacayo knew that the elevator had previously been patched by appellee but their inspection of E-110 revealed that it was structurally sound. Vickers and Lacayo decided that the best way to reduce the height of E-110 was to dismantle it in reverse order by first removing five pipes which connected the elevator to silos and rail siding; then hooking onto the top of the elevator with a crane and removing the guy wires which kept wind from affecting the elevator; and then cutting off the 30-foot section and lowering the elevator to the ground. It is undisputed that none of appellee's personnel participated in the decision of how to dismantle the elevator or exercised any control over how Ironwood performed the work. On the day of the dismantling, appellee's personnel used the elevator to load a railroad car, and the elevator was structurally intact at that time. Ironwood then took control of the elevator to begin dismantling. Appellant was part of the crew assembled to dismantle the elevator. After the fourth pipe had been removed, Vickers checked to make sure that the elevator had not shifted. Vickers then instructed the crew to remove the last pipe, but when that pipe was removed, elevator E-110 collapsed, carrying elevator E-111 with it. Appellant was standing on the platform near the top of elevator E-111 and was injured when elevator E-111 fell to the ground.

Appellant contends that the trial court erred in granting summary judgment to appellee. Summary judgment is proper if "the pleadings . . . , together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . ." OCGA § 9-11-56 (c). "On motion for summary judgment, 'the party opposing the motion is to be given the benefit of all reasonable doubts and all favorable inferences that may be drawn from the evidence. [Cits.]' [Cit.]" *Eiberger v. West*, 247 Ga. 767, 769 (1a) (281 SE2d 148) (1981). Appellant contends that elevator E-110 was unsafe; that it had been patched several times by appellee; that it showed signs of rust and wear and tear; and that appellee knew it was unsafe because it was too high for appellee to perform routine maintenance. We note at the outset that appellant has failed to show the existence of a defect in elevator E-110 which caused it to collapse. Following the accident, an inspector from the Mine Safety & Health Administration ("MSHA") investigated the accident and concluded that the failure of elevator E-110 was "triggered by the dismantling operation, rather than from structural deterioration alone, or other causes." Furthermore, appellant has failed to establish liability on the part of appellee by showing that appellee had superior knowledge of a defect. " 'Before the owner of premises can be held liable for injuries done by reason of a defect therein to one lawfully on the premises in the employ of an independent contractor engaged by the owner to perform services on the

premises, it must appear that the owner had control of the premises.' [Cits.] The basis of the owner or occupier's liability is his superior knowledge of the existence of the defect or hazard that may subject an invitee to an unreasonable risk of harm. [Cits.]" *Amear v. Hall*, 164 Ga. App. 163, 167 (2) (296 SE2d 611) (1982). Both Lacayo and Vickers stated in their affidavits that they knew that elevator E-110 was an older piece of equipment which had been previously patched and that no one employed by appellee made any representations about the condition of the elevator. There is also evidence that Ironwood's employees inspected elevator E-110 prior to the dismantling and saw no defects which affected the structural integrity of the elevator. "An individual contractor is expected to determine for himself whether his place of employment is safe or unsafe, and ordinarily may not recover against the owner for injuries sustained in the performance of the contract. [Cits.]" *Amear v. Hall*, supra at 167. There is no evidence of any latent or patent defect of which appellee had knowledge and which Ironwood could not have discovered during its inspection.

Appellant also argues that appellee is liable under OCGA § 51-2-5 (2) which provides that an employer is liable for the negligence of a contractor "[i]f, according to the employer's previous knowledge and experience, the work to be done is in its nature dangerous to others however carefully performed." Appellant contends that the dismantling of the elevator was inherently dangerous work regardless of how carefully performed. The record does not support appellant's contention. The MSHA report indicates that the elevator could have been safely dismantled with the use of additional cranes and structural bracing. Therefore, we cannot conclude that the dismantling of the elevator was inherently dangerous, "however carefully performed." See *Green v. Moreland*, 200 Ga. App. 167 (3) (407 SE2d 119) (1991).

For the foregoing reasons, we conclude that the trial court did not err in granting summary judgment to appellee.

*Judgment affirmed. Sognier, C. J., and McMurray, P. J., concur.*

DECIDED JULY 14, 1992 —
RECONSIDERATION DENIED JULY 28, 1992 —

*Beauchamp & Associates, William Eckhardt*, for appellant.
*Hodges, Erwin, Hedrick & Kraselsky, William A. Erwin*, for appellee.