A94A0942. McCURLEY et al. v. LUDWIG et al.
(452 SE2d 554)

SMITH, Judge.

Deborah and Jerry McCurley brought suit against Carole Ludwig and her son, John Pritchard, for injuries resulting when the framework of an unfinished roof over a riding arena on Ludwig's farm collapsed and fell on both Deborah McCurley and her horse. See generally OCGA § 51-3-1. The case went to trial before a jury. At the close of evidence, the court granted Ludwig's motion for directed verdict with respect to her potential liability as the owner of the premises. The remaining case against the defendants ended with a jury verdict in their favor. The McCurleys filed a motion for new trial, which was denied. This appeal followed.

The facts are not in material dispute. Ludwig is a veterinarian who owns and lives on a farm in Oconee County, Georgia, where she gives riding lessons. The lessons are given at a specially prepared 69 x 180 foot riding arena. In late May or early June 1990, Ludwig decided to cover the arena with a roof. The roof was designed to use preconstructed trusses supported by posts and beams set in the ground outside the concrete curb of the arena, allowing unobstructed riding within. Ludwig continued to give riding lessons during construction.

At the time of the accident, Deborah McCurley was a dressage rider who had taken both private and group lessons from Ludwig at Ludwig's farm. McCurley was preparing for a dressage competition and called Ludwig to schedule a lesson. McCurley first became aware of the construction in progress when she arrived at the Ludwig farm for her scheduled lesson. Earlier that very day, appellee Pritchard had completed the placement of the roof trusses on their supporting poles and beams. Even though the trusses were only "temporarily" braced, the arena was in use when McCurley arrived. Upon completion of the riding lessons already in progress, Ludwig invited McCurley and her horse into the arena.

At the end of the lesson, Ludwig exited the arena while McCurley remained to cool down her horse. At that time, a summer rainstorm began to form on the horizon, and a high wind developed. As the wind continued to blow against the roof structure, a crack was heard. The roof trusses collapsed, falling on McCurley and her horse and injuring McCurley.

1. The McCurleys contend the trial court erred in directing a verdict in favor of Ludwig at the close of evidence. We disagree. "The basis of the owner or occupier's liability is [her] superior knowledge of

the existence of the defect or hazard that may subject an invitee to an unreasonable risk of harm." *Amear v. Hall*, 164 Ga. App. 163, 167 (2) (296 SE2d 611) (1982). The McCurleys failed to establish at trial that Ludwig possessed a superior knowledge of a hazardous condition or defect with respect to the roof structure, *or even that such a defect existed.* As to the latter point, see, e.g., *Brooks v. Oil-Dri Corp.*, 205 Ga. App. 214, 215 (422 SE2d 22) (1992).

The McCurleys urge that this case is governed by the holding in *Towles v. Cox*, 181 Ga. App. 194, 197 (1) (351 SE2d 718) (1986). We disagree. *Towles* dealt with a plaintiff whose injuries could be directly attributed to the landowners' failure to maintain a constant patrol during periods of dangerous construction *activity* that would cause a " 'reasonable apprehension of danger to other customers or invitees. . . .' " Id. Construction "activity" clearly did not cause Deborah McCurley's injuries in this case; they were caused by the failure of a free-standing structure to remain standing, for whatever reason.

The *only* person who testified at trial regarding the state of the roof structure at the time it failed was the person in charge of its construction, appellee Pritchard. Pritchard confirmed that he told no one the structure as it existed just prior to its collapse might be vulnerable. He also testified he would not have braced the structure differently even if he had planned to delay its completion for a week. Finally, he confirmed that in his opinion there was no problem with the structural integrity of the bracing as it existed on the day the framing collapsed.

Even if it is conceded that Ludwig had a duty to inspect the roof structure before allowing riders inside the arena, there was *no* evidence presented at trial that she would have discovered any defect of which McCurley would have been unaware. We find no error in the trial court's directed verdict in favor of Ludwig on this limited issue.[1]

2. The McCurleys argue the evidence did not authorize a charge on act of God. However, Ludwig testified that the wind caused the tops of her sycamore trees to wave; that the weather event was "real strange"; and that it occurred during a time when the weather had been generally dry, stagnant, and "oppressively hot." Deborah McCurley confirmed that "some wind came up" during the lesson and blew trash across the arena.

"Even slight evidence is enough to authorize a trial court to charge the law on an issue if there is some evidence from which a legitimate process of reasoning can be carried." (Citations omitted.) *Mann v. Anderson*, 206 Ga. App. 760, 762 (1) (426 SE2d 583) (1992).

---

[1] The court left open the possibility that Ludwig could be held liable on other bases, but determined there was no evidence that Ludwig possessed superior knowledge of any hazard associated with the failed structure.

In *Sampson v. Gen. Elec. Supply Corp.*, 78 Ga. App. 2, 8 (3) (50 SE2d 169) (1948) and *Goble v. Louisville &c. R. Co.*, 187 Ga. 243, 250-251 (200 SE 259) (1938), the trial court's refusal to charge on act of God was upheld since " 'an ordinary freshet is not the act of God in the legal sense. . . .' " *Goble,* supra. However, the rationale in both cases was that such an act "excludes all idea of human agency." Id. In neither case could it be said that the "freshet" was the sole cause of plaintiff's injury, unmixed with defendant's failure to reasonably anticipate it, whether the downpour was extraordinary or totally unremarkable. It therefore could not be argued in *Sampson* or *Goble,* supra, that a charge on act of God was appropriate as a matter of law.

In the present case, the McCurleys did not produce evidence establishing the existence of any specific defect in the structure which caused it to fail, or that the structure was inherently unsafe. It would appear that the McCurleys merely presumed that the result speaks for itself. Although the issue was never discussed *in any way* at trial, it appears in hindsight that the circumstances of Deborah McCurley's injuries may have been such that an inference of Pritchard's negligence would have been permitted under the doctrine of res ipsa loquitur.[2] However, that rule of evidence does no more than to *allow* the jury to decide the case and to make or reject the inference authorized as it sees fit — it does not create a presumption to that effect for the defendant to overcome. See, e.g., *Evans v. Heard,* 264 Ga. 239, 240 (442 SE2d 753) (1994).

In the unsettling absence of testimony affirmatively indicating that the roof structure would have remained standing but for Pritchard's negligence, the jury was likewise authorized to infer that the summer storm alone was to blame for Deborah McCurley's injuries, no matter how improbable that result might otherwise appear. In short, the absence of evidence other than the mere fact that the roof collapsed "legitimates" a "process of reasoning" from which the jury could infer that no act or omission on Pritchard's part caused the roof structure to fall. *Mann v. Anderson,* supra. Neither *Sampson* nor *Goble,* supra, stands for the proposition that the court may not leave to the jury the question whether some natural event was the *sole* cause

---

[2] The dissent points out that a jury charge was "authorized" on the doctrine of res ipsa loquitur and is apparently untroubled by the fact that the McCurleys did not request a charge to that effect or otherwise even suggest, either in the trial court or on appeal, that the doctrine might apply. However, "[e]xcept as otherwise provided . . . , in all civil cases, no party may complain of the giving or the failure to give an instruction to the jury unless he objects thereto before the jury returns its verdict, stating distinctly the matter to which he objects and the grounds of his objection." OCGA § 5-5-24 (a). No such request was made in this case. We may not overrule this statutory mandate, and therefore whether the trial court *could* have given a charge on the doctrine of res ipsa loquitur is totally irrelevant to the issues the McCurleys enumerate.

of plaintiff's injury when the evidence presented raises and does not preclude that possibility.

Since some evidence was presented from which the jury could reasonably conclude that the incident was caused by unusually strong winds rather than the negligence of either appellee, we find no error.

*Judgment affirmed. Pope, C. J., Birdsong, P. J., Beasley, P. J., Andrews, Johnson and Ruffin, JJ., concur. McMurray, P. J., and Blackburn, J., dissent.*

McMURRAY, Presiding Judge, dissenting.

I respectfully dissent, as it is my view that the majority incorrectly applies the "superior knowledge" doctrine in holding that the absence of proof regarding Ludwig's knowledge of a hazardous condition or defect in the temporarily braced structure demands a finding that she is not responsible for her riding student's injuries. On the contrary, it is my view that the circumstances of this case authorize a finding that Ludwig failed to exercise ordinary care in inspecting or otherwise making sure the hastily braced shelter over her riding arena was safe for her students. In fact, it is my view that the very lack of evidence cited by the majority regarding the defect which caused the roof structure to collapse (which is not surprising since the defect may well have been impossible to detect after the structure collapsed) authorized a charge on res ipsa loquitur, thereby allowing the jury to draw an inference that Ludwig's negligence in failing to inspect or properly maintain her temporarily braced riding structure was the cause of the roof's collapse. Finally, I cannot agree that a summer rainstorm is an occurrence which authorizes a charge on "act of God."

1. The "superior knowledge" defense is available in cases where the danger is open and obvious and the invitee closes her eyes to the danger, assuming the dangers and risks incident to the known condition. See *White v. Fred F. French Mgmt. Co.*, 177 Ga. App. 661 (340 SE2d 276). "A finding that the plaintiff is precluded from recovering . . . because of her own equal or superior knowledge of the hazard is, in essence, a finding that plaintiff's own negligence preponderated in causing the injury. Cf. *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980)." *Flood v. Camp Oil Co.*, 201 Ga. App. 451, 452 (411 SE2d 348). In the case sub judice, there is no evidence that the defect or frailty which caused the temporarily braced riding structure to collapse (under the stress of a summer storm) was open and obvious. It therefore cannot be said that Deborah McCurley's own negligence preponderated in causing her injury. On the other hand, Ludwig had a duty to exercise ordinary care in keeping her premises safe to invitees. OCGA § 51-3-1. To this extent, Ludwig knew that the riding shelter was still under construction and that it had been temporarily braced earlier in the day before McCurley arrived for her rid-

ing lesson. However, the evidence indicates that Ludwig did nothing to make sure that the structure was safe. She did not inspect the structure and she (apparently) only relied on her son's word that it was safe to carry on business as usual. It is my view, that these circumstances would authorize a finding that Carole Ludwig was negligent in carrying on her business under a large and temporarily braced structure without at least some inspection for the structure's integrity. Moreover, it is my view that (at the very least) the absence of evidence regarding the reasons for the failed structure would have authorized a charge on res ipsa loquitur so as to allow the jury to resolve the issue of Ludwig's negligence.

"The doctrine of res ipsa loquitur . . . is a doctrine of necessity to be applied, where otherwise appropriate, in cases where there is no evidence of consequence showing negligence on the part of the defendant. See *Harrison v. Southeastern Fair Assn.*, 104 Ga. App. 596 (3), 605-608 (122 SE2d 330) (1961); *Parker v. Dailey*, 226 Ga. 643, 645 (177 SE2d 44) (1970)." *Southern Bell Tel. &c. Co. v. LaRoche*, 173 Ga. App. 298, 299 (1) (325 SE2d 908). "The first effect of res ipsa loquitur is to carry the case to the jury. If the requirements of the maxim are met, the trial judge may not direct a verdict for the defendant, nor grant summary judgment. The second effect is to allow the jury to draw an inference of the negligence alleged if they see fit to do so." Green, Ga. Law of Evidence (3d ed.), § 39 at 84. The following elements are sufficient to support such an inference under res ipsa loquitur: "A showing (1) that an injury occurred, (2) that the offending instrument was owned or wholly controlled by the defendant, (3) that the occurrence was such as ordinarily would not happen without negligence, and (4) that neither the plaintiff nor anyone else had tampered with the instrumentality causing the injury. . . ." Id. The circumstances of the case sub judice reveal these four elements are present so as to authorize a charge on res ipsa loquitur. See *Smith v. Telecable of Columbus*, 142 Ga. App. 535, 536 (236 SE2d 523).

2. It is my view, that the evidence did not authorize a charge on "act of God" and that McCurley should also be afforded a new trial against Ludwig's son, John Pritchard.

" 'While every shower of rain that falls upon the earth is the act of God, in contradistinction to the act of man, yet an ordinary freshet is not the act of God in the legal sense which protects a [person] against responsibility for the non-performance of a [legal duty].' " *Goble v. Louisville &c. R. Co.*, 187 Ga. 243, 249 (4), 250 (200 SE 259). Contrary to the majority's view, I do not think swaying sycamore trees and a sudden summer storm are such strange and extraordinary events so as to allow Pritchard to raise the defense of "act of God." Any person who has enjoyed hot summer days in Georgia knows that sudden strong winds, swaying pines and late afternoon showers are

common.

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED DECEMBER 5, 1994 —
RECONSIDERATION DENIED DECEMBER 20, 1994 — 

*McDonald, Haggard & Carney, James E. McDonald, Jr., H. Patrick Haggard,* for appellants.

*Robert J. Huff, Gorby & Reeves, Michael J. Gorby, Blake H. Frye,* for appellees.