A98A0736. JOHNSON v. KIMBERLY CLARK.
(504 SE2d 536)

ELDRIDGE, Judge.

Michael Johnson, plaintiff-appellant, appeals from the trial court's grant of summary judgment to Kimberly Clark, defendant-appellee, on his premises liability claim for a crushed thumb suffered while painting safety poles on Kimberly Clark's premises.

Plaintiff was employed by Goodman Decorating as a painter. Goodman had contracted with Kimberly Clark to paint various structures and fixtures on its property. Each morning plaintiff and other painters reported to Goodman's central location on Kimberly Clark's property where they were told by Tim Day, their Goodman Decorating supervisor, to which job they were assigned. Plaintiff had been working on these premises for three or four weeks prior to the accident at issue and became familiar with the layout. No one from Kimberly Clark gave the painters directions or controlled the method or manner of their painting.

On March 30, 1994, Johnson had been assigned to a building containing four bays with machinery in them and was told by Day to paint the safety poles in the hallway and bays "safety yellow." These poles were iron tubes, approximately four feet high, filled with concrete and bolted to the floor around the machinery to protect it. At the bottom of each pole was a square plate with four holes, which

were placed over bolts in the concrete floor and secured by nuts. The bolts, when secured, stuck up from the plates one inch to one and one-quarter inches. Plaintiff's job was to paint the pole, plate, and bolts. There were four safety poles around each piece of machinery in each bay.

Plaintiff began working in the first bay around 8:00 a.m. and had painted approximately 16 poles in the first bay and 16 poles in the second bay before arriving in the third bay around lunchtime.

Over the two weeks he had been working, plaintiff had seen that the four-foot-tall and five-inch-diameter safety poles were filled with concrete and bolted to the concrete floor through small base plates just large enough that four bolts could be installed and that the nut and bolt protruded above the plates. Plaintiff was injured in the last bay to be painted, in which there were eight to ten poles; he saw for the first time that day two safety poles not bolted down and off to the side. Plaintiff did not examine the poles or pay close attention to them. The two poles were leaning against each other.

Plaintiff was asked: "Did you see them before you started painting the pole where the accident happened?" A. "Yeah, I assume. Yeah." "Did you examine them?" "No. I just sat there and I was painting this pole. I was three feet away from these painting. I didn't know they were going to fall on me. I mean, I was a good ways away from them. They wasn't that close but" — "Did anyone tell you that the pole or poles that fell on your hand were bolted to the ground?" "No, but you could see that they was bolted at one time by the, you know, when you have got bolts on top of paint and you tighten them down and you paint over them or, well, when you take that bolt off, you have got a little silver spot on the metal because the bolt was bolted, I mean, painted on the pole; and when you move that bolt, it's going to be a raw spot there, you know, it will be metal." The plaintiff was not asked if he saw that there were no bolts before or after he was injured. The record fails to show that he knew that the two safety poles were not bolted down prior to his injury, and on summary judgment, we must take the inference most favorable to the non-moving plaintiff.

Because he had not inspected or painted the poles, all the plaintiff knew about the two safety poles off to the side was that there were no bolts sticking up through the base plates. He did not know: if there were any bolt stubs below the surface of the plate; if there was any internal fixation inside the pole into the concrete; if there was any mastic or cement holding the plate to the floor; if the floor beneath the plate was sloped or rough; if the safety pole was movable; if it was safer for the poles to be laid down; or if the poles should not be leaned against each other. All of the information that the plaintiff needed for his own safety was known to Kimberly Clark,

because its employees had placed the two safety poles there at an earlier time, i.e., such time within which a reasonable inspection could have been made, and prior to the time plaintiff had been painting. See *Smith v. Winn-Dixie Atlanta*, 203 Ga. App. 565 (417 SE2d 202) (1992); *Queen v. Kroger Co.*, 191 Ga. App. 249 (381 SE2d 413) (1989).

Under the facts of this case, the only people with access to the area where plaintiff was injured were either employees of Kimberly Clark or employees of Goodman Decorating, Kimberly Clark's independent contractor. Thus, one entity or the other was responsible for the removal and negligent placement of the safety pipes, because the evidence shows no one else could have done it. Plaintiff did not place the pipes.

Under OCGA § 51-2-4, "[a]n employer generally is not responsible for torts committed by his employee when the employee exercises an independent business and in it is not subject to the immediate direction and control of the employer." "An employer is liable for the negligence of a contractor: . . . (4) If the wrongful act is the violation of a duty imposed by statute." OCGA §§ 51-2-5 (4); 51-3-1. "Because the owner or occupier's duties to keep the premises and approaches safe are statutory (OCGA § 51-3-1), those duties are nondelegable even though the owner has a contract for another party to provide [the painting]. OCGA § 51-2-5 (4); *Confetti Atlanta v. Gray*, 202 Ga. App. 241, 244 (4) (414 SE2d 265) (1991). 'An employer is liable for the negligence of a contractor . . . if the wrongful act is the violation of a duty imposed by statute.' OCGA § 51-2-5 (4)." *Griffin v. AAA Auto Club South*, 221 Ga. App. 1, 2 (1) (470 SE2d 474) (1996); accord *Parking Co. of America v. Sucan*, 195 Ga. App. 616, 617 (1) (394 SE2d 411) (1990); *Towles v. Cox*, 181 Ga. App. 194, 196 (351 SE2d 718) (1986); *Gerald v. Ameron Auto. Centers*, 145 Ga. App. 200, 202 (2) (243 SE2d 565) (1978). "[K]nowledge and conduct of [Goodman Decorating] are imputed to [Kimberly Clark]." *Bruno's Food Stores v. Taylor*, 228 Ga. App. 439, 442 (1) (491 SE2d 881) (1997); see *Kelley v. Piggly Wiggly Southern*, 230 Ga. App. 508, 512-514 (496 SE2d 732) (1997) (Eldridge, J., concurring specially). Thus, if any Goodman Decorating employee removed the safety poles and leaned them together, then the knowledge would be imputed to Kimberly Clark.

"[Kimberly Clark] would still owe a duty to [plaintiff] to exercise ordinary care to keep the premises and approaches safe unless [Kimberly Clark] had delivered full and complete possession of the premises to [Goodman Decorating] either on a temporary or permanent basis. *Little v. Liberty Savings Bank*, 191 Ga. App. 732 (382 SE2d 734) (1989); *Towles v. Cox*, [supra]." *Feggans v. Kroger Co.*, 223 Ga. App. 47, 50 (1) (476 SE2d 822) (1996). Under the facts of this

case, there is no evidence that Goodman Decorating had full and complete control of the premises where painting was being done, even on a temporary basis. Therefore, a fact issue exists as to control of the premises. If the premises have not been relinquished to the independent contractor, then the owner remains liable; however, if the exclusive control of the premises is in the independent contractor, then the owner is not liable for the premises while the premises are out of its control. See *Towles v. Cox*, supra at 195-198; compare *Braswell v. Walton*, 208 Ga. App. 610, 611 (431 SE2d 417) (1993); *Green v. Moreland*, 200 Ga. App. 167, 169 (4) (407 SE2d 119) (1991); *Modlin v. Swift Textiles*, 180 Ga. App. 726 (350 SE2d 273) (1986) (where control of the premises relinquished either by written agreement or de facto).

If *any* employee of Kimberly Clark, not just the employee in the area, removed the safety poles and leaned them against each other, then such conduct was the active negligence, the knowledge of which would be imputed to Kimberly Clark. See *Lipham v. Federated Dept. Stores*, 263 Ga. 865 (440 SE2d 193) (1994). "Acts or omissions of an owner/occupier of the premises can create a dangerous condition on the premises; such acts or omissions constitute active negligence and do not become static just because the condition pre-exists the arrival of the invitee. Where acts or omissions of the owner/occupier work positive injury to others, such acts or omissions are active negligence in the classic sense. See Smith & Prosser, Cases & Materials on Torts, p. 320 (1). . . . Where the owner/occupier of the premises through malfeasance (commission of an act wrongful in itself), misfeasance (improper performance of an act), or nonfeasance (the failure to perform an act) creates a reasonably foreseeable danger to an invitee, then knowledge is presumed or imputed to the owner/occupier, because it is the tortfeasor's act or omission that created the danger or allowed the danger to continue unabated or without warning. [Cits.]" *Bruno's Food Stores v. Taylor*, supra at 443-444; see also *Lipham v. Federated Dept. Stores*, supra; *Wade v. Mitchell*, 206 Ga. App. 265 (424 SE2d 810) (1992); *Ga. Power Co. v. Deese*, 78 Ga. App. 704, 707 (51 SE2d 724) (1949); *Clinton v. Gunn-Willis Lumber Co.*, 77 Ga. App. 643 (49 SE2d 143) (1948). Thus, if any employee of the defendant removed and placed the safety poles where plaintiff was injured, then such knowledge and negligence are imputed to Kimberly Clark. A factual issue exists as to the acts and knowledge of defendant's employees regarding the two loose safety poles.

Not only under OCGA § 51-3-1 did Kimberly Clark have a duty of inspection to discover the negligent acts of its employees or contractor, but under the Occupational Safety & Health Act of 1970, 29 USCS § 651 et seq., 84 Stat. 1593 ("OSHA"), Kimberly Clark had a duty to inspect "Walking-Working Surfaces" for dangerous condi-

tions. See 29 CFR § 1910.22 (a) (1) and (3), (b) (1). While the plaintiff was not an employee of Kimberly Clark under 29 USCS § 654, so that negligence per se would apply, if Kimberly Clark had actual or constructive knowledge (for purposes of OSHA) of the hazard, then Kimberly Clark also had knowledge for purposes of OCGA § 51-3-1. See generally *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980). Thus, if there was an OSHA violation, the knowledge by Kimberly Clark would be superior to the knowledge of the plaintiff when he "assumed" that he saw the safety poles before one fell on him, because Kimberly Clark was under an affirmative OSHA duty to periodically inspect and to see. that work and walk surfaces were unobstructed, which duty was owed to its employees. Even if plaintiff knew the poles had no bolts, such knowledge was inferior to Kimberly Clark's knowledge. A fact issue exists as to the knowledge of the defendant and of the plaintiff's knowledge at the time of injury.

There also exists a factual question as to plaintiff's exercise of ordinary care for his own safety. See *Robinson v. Kroger Co.*, 268 Ga. 735, 739-740 (1) (493 SE2d 403) (1997).

Under the facts and circumstances of this case, for purposes of summary judgment it does not matter who removed and negligently placed the safety poles, because the knowledge of such acts, as well as the negligence, is imputed to Kimberly Clark. Under *Lau's Corp. v. Haskins*, 261 Ga. 491 (405 SE2d 474) (1991), all favorable inferences must be given to the plaintiff, even though plaintiff has raised by circumstantial evidence only the disputed issues of knowledge and negligence. Issues of material disputed fact remain for a jury. The grant of summary judgment should be reversed.

*Judgment reversed. McMurray, P. J., Johnson, P. J., Smith, J., and Senior Appellate Judge Harold R. Banke concur. Andrews, C. J., and Blackburn, J., dissent.*

ANDREWS, Chief Judge, dissenting.

Because the record is devoid of evidence of Kimberly Clark's superior knowledge of the hazard presented by the freestanding poles, I respectfully dissent. This case deals with the first prong of *Alterman Foods v. Ligon*, 246 Ga. 620, 623 (272 SE2d 327) (1980), the owner's superior knowledge, as discussed in *Robinson v. Kroger Co.*, 268 Ga. 735, 736 (493 SE2d 403) (1997) and is therefore not affected by the changes in summary judgment evidentiary burdens made in *Robinson*, supra at 748, regarding the second prong of *Alterman Foods*.

In addition to the facts set out in the majority, the record reflects that in the third bay painted by Johnson, in addition to the four poles bolted to the floor around each piece of machinery, there were two poles not bolted to the floor and "just standing there" off to the side.

This was the only time he had encountered two freestanding safety poles, and he had seen them during the morning when he walked through the bay. He did not know how the poles came to be loose or standing in the bay or who might have put them there. He did not further examine these two poles, but began painting one of the bolted-down poles about three feet away from those two. He was on his knees facing the pole he was painting and concentrating on it, painting with his left hand. His right hand was fisted on the concrete for balance. The two poles fell, and one crushed his right thumb.

There was no one else in the bay with him, and although there were Kimberly Clark personnel in the offices adjoining the bay, they could not see him because their view was blocked by a wall. Johnson stated repeatedly that he did not knock the poles over, but he did not know what happened or what had caused the poles to fall.

1. The trial court based its grant of summary judgment in large part upon the affidavit of Graf, an Operations Specialist for Kimberly Clark. In reviewing grant or denial of summary judgment, this Court conducts a de novo review of the evidence. *Goring v. Martinez*, 224 Ga. App. 137, 138 (2) (479 SE2d 432) (1996); *Gaskins v. Hand*, 219 Ga. App. 823 (466 SE2d 688) (1996).

On summary judgment, evidentiary rules apply, *Strickland v. DeKalb Hosp. Auth.*, 197 Ga. App. 63, 65 (2) (a) (397 SE2d 576) (1990), and hearsay evidence is without probative value and cannot be considered unless it is part of the res gestae. *Taylor & Mathis, Inc. v. Doyle*, 219 Ga. App. 445 (465 SE2d 484) (1995).

Here, the affidavit of Graf consists primarily of his summary of numerous conversations with unnamed Kimberly Clark employees concerning the loose poles. Such conversations after the fact are clearly hearsay, not part of the res gestae, and inadmissible. *Harrison v. Golden*, 219 Ga. App. 772, 774 (2) (b) (466 SE2d 890) (1995).

Nonetheless, the grant of summary judgment should be affirmed on appeal if it is right for any reason. *Deese v. NationsBank of Ga.*, 222 Ga. App. 275, 277 (1) (474 SE2d 18) (1996).

2. In addition to Graf's affidavit, discussed supra, Kimberly Clark relied on Johnson's answers to interrogatories in which Johnson described the incident and his claim that Kimberly Clark was negligent. In addition to the facts previously set out, Johnson stated that while he was painting the bolted-down pole, "[b]ehind him and approximately 3 to 5 feet away, a safety pole barrier device of similar size, weight and dimensions, which was not bolted down, fell. . . . Plaintiff asserts that the negligent failure to maintain the heavy steel safety pole barrier device, filled with concrete, in a bolted down condition caused an extreme hazard to persons working at the facilities by creating the potential of the barrier becoming mobile, such as by falling and injuring a person in its vicinity."

(a) Initially, in response to Kimberly Clark's denial of negligence, Johnson has failed to show that there was any "defect" present in the two unattached safety poles. That they had not yet been installed as they were designed to be does not alone suffice.

(b) Also, even assuming this was a defect, " ' "[b]efore the owner of premises can be held liable for injuries done by reason of a defect therein to one lawfully on the premises in the employ of an independent contractor engaged by the owner to perform services on the premises, it must appear that the owner had control of the premises." (Cits.) The basis of the owner or occupier's liability is his superior knowledge of the existence of the defect or hazard that may subject an invitee to an unreasonable risk of harm. (Cits.)' *Amear v. Hall*, 164 Ga. App. 163, 167 (2) (296 SE2d 611) (1982)." *Brooks v. Oil-Dri Corp. &c.*, 205 Ga. App. 214, 215-216 (422 SE2d 22) (1992).

Johnson's own testimony shows that there were no Kimberly Clark employees in the vicinity of the loose poles, nor did any such employee in any way direct how he was to do his work for Goodman. Therefore, there is no evidence of Kimberly Clark's superior knowledge of the defect. *McCurley v. Ludwig*, 215 Ga. App. 798 (1) (452 SE2d 554) (1994) (failure of plaintiff to demonstrate superior knowledge of owner of defect in arena under construction which collapsed and injured plaintiff).

(c) Also, here, the fact that Johnson was in the employ of an independent contractor imposes on Goodman and Johnson the obligation to determine whether the place of employment is safe or unsafe and, ordinarily, an independent contractor or his employee may not recover against the owner for injuries sustained in the performance of the contract. *Hudson v. Santangelo*, 228 Ga. App. 768, 774 (3) (492 SE2d 673) (1997); *Torrington Co. v. Hill*, 219 Ga. App. 453, 455 (1) (465 SE2d 447) (1995); *Brooks*, supra; *Amear*, supra.

(d) Apparently recognizing the dearth of evidence of Kimberly Clark's knowledge of the defect, Johnson urges the doctrine of res ipsa loquitur as a basis for denial of summary judgment.

" 'The expression "res ipsa loquitur" means that the transaction speaks for itself. It is a rule of evidence which allows an inference of negligence to arise from the happening of an event causing an injury to another where it is shown that the defendant owned, operated, and maintained, or controlled and was responsible for the management and maintenance of the thing doing the damage and the accident was a kind which, in the absence of proof of some external cause, does not ordinarily happen without negligence.' [Cit.]" *Evans v. Heard*, 264 Ga. 239, 240 (442 SE2d 753) (1994).

The doctrine is not applied absent the showing of control by the defendant or where there is the possibility of any intervention of an intermediary cause which could have produced the injury. *Parker v.*

*Dailey*, 226 Ga. 643, 645 (1) (177 SE2d 44) (1970); *Bridgestone Fire-stone v. Green*, 198 Ga. App. 858, 860 (2) (403 SE2d 442) (1991).

Here, as in *Innes v. Dixie Svc. Center*, 224 Ga. App. 584, 585 (481 SE2d 572) (1997), there has not been the required showing of exclusive control over the object, the loose pole, causing the injury. Innes, employed by Express Services, was dispatched to Dixie Service after a fire to help clean up. Innes and his co-worker were to clean storage room shelves by taking down the items off the shelf, cleaning the shelf and item, and replacing items on the shelf. Innes was sitting on a crate cleaning bottom shelves when he was hit on the head and shoulder by a baffle pipe falling from the shelves behind him.

Innes was unable to show how or by whom the baffle pipe had been placed on the shelf before it fell and there was no one from Dixie Service present in the storage room when it fell. Under these circumstances, this Court found no application of res ipsa loquitur.

Similarly, in *Sams v. Wal-Mart*, 228 Ga. App. 314 (491 SE2d 517) (1997), Sams and her husband were shopping in the housewares department of Wal-Mart when a box or boxes of cookware fell from the shelves and injured her. No Wal-Mart employee was in the vicinity at the time.

Summary judgment to Wal-Mart was affirmed because there was no showing that Wal-Mart's knowledge of the alleged peril was superior, and the superior knowledge analysis, not res ipsa loquitur, applied. *Sams*, supra at 316.

Here, as in *Sams*, the plaintiff was unable to show exclusive control by the owner of the object causing damage, there was no explanation for the actual event causing injury, and on summary judgment, res ipsa loquitur could not be used to "fill the evidentiary gap. Proof of the occurrence of an injury, without more, is insufficient to establish liability on the part of a proprietor." Id. at 316.

Therefore, for the reasons discussed, I believe the grant of summary judgment to Kimberly Clark should be affirmed.

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED JULY 16, 1998.

*Alexander J. Repasky*, for appellant.

*Temple, Strickland, Counts & Dinges, William D. Strickland*, for appellee.