A01A1411. LONG LEAF INDUSTRIES, INC. v. MITCHELL et al.
(556 SE2d 242)

RUFFIN, Judge.

William Mitchell and his wife sued Long Leaf Industries, Inc. ("Long Leaf"), alleging that Mitchell was injured while working on Long Leaf's premises. In their complaint, the Mitchells asserted that William's injuries were caused by Long Leaf's negligence, that his wife suffered a loss of consortium, and that Long Leaf's conduct entitled them to punitive damages. A jury found in the Mitchells' favor and awarded them compensatory damages, but rejected their claim for punitive damages. Long Leaf appeals, asserting that the court erred in denying its motion for directed verdict, recharging the jury, admitting certain evidence, and awarding the Mitchells prejudgment interest. For reasons that follow, we reverse and remand for a new trial.

1. A trial court can direct a verdict only when "the evidence introduced, with all reasonable deductions therefrom, shall demand a particular verdict."[1] On appeal from a trial court's denial of a motion for directed verdict, we view the evidence in the light most favorable to the jury's verdict and determine whether there is any evidence to support that verdict.[2]

Viewed in this manner, the evidence[3] shows that, in October 1996, William Mitchell was employed as a welder by Tony Lyle, who had a contract to install pipe at Long Leaf's plant. Mitchell worked on the Long Leaf project modifying pipes located inside a large tank, which was coated on the inside by a rubber substance. Because the task required the use a high voltage cutting tool called a plazmark, before Mitchell started working, he and his assistant asked Long Leaf employees, including plant manager Bob Strelau, whether the rubber coating would burn. Although Strelau and the other Long Leaf employees knew the rubber was flammable, they repeatedly told Mitchell and his helper that it was not.

As Mitchell started cutting the pipes with his plazmark, oil inside the pipes began to smoke and burn. Mitchell testified that "it wasn't a hazard," but the smoke remained inside the tank and he could not breathe. Mitchell ceased working, and his assistant went to Strelau, who gave them dust masks to wear. When it appeared that the dust masks were insufficient, Strelau suggested that they put a

---

[1] OCGA § 9-11-50 (a).

[2] See *Crump v. McDonald*, 239 Ga. App. 647-648 (1) (520 SE2d 283) (1999).

[3] We note that the Mitchells' appellate brief contains numerous citations to the video deposition transcript of Long Leaf's plant manager. The Mitchells have not shown, however, that the deposition was presented to the jury. In the absence of such evidence, we cannot rely on these record citations in determining whether the trial court erred in denying Long Leaf's motion for directed verdict.

box fan on top of the tank to suck the smoke out, but that also failed. According to Mitchell, he went back to Strelau to tell him about the problem, and Strelau asked whether the rubber coating was burning. When Mitchell told Strelau that oil inside the pipe was causing the problem, Strelau reassured him that the rubber was "not supposed to [burn]."

Still confronted with the smoke, Strelau fitted Mitchell with a respirator. Mitchell donned the respirator and reentered the tank to resume cutting the pipes with his plazmark. While he was doing so, the rubber coating caught fire. The flames blocked Mitchell's only means of escaping the tank, a manhole approximately 20 feet above. The fire was eventually extinguished, and Mitchell was rescued from the tank. Mitchell and his wife filed the instant action to recover for the injuries sustained as a result of the incident.

On appeal, Long Leaf acknowledges that OCGA § 51-3-1 imposes a duty on a landowner to use ordinary care to keep its premises safe for workers, but argues that this case is an exception because Mitchell's work necessarily changed the character of the workplace.[4] The exception applies "where the injured servant was hired for the express purpose of assisting in the repair, demolition, or alteration of some instrumentality . . . , and the unsafe conditions from which the injury resulted arose from or were incidental to the work undertaken by him."[5]

But this exception did not necessarily apply here. It presupposes that the involved risk is incidental to the work performed and, therefore, known to, and assumed by, the worker.[6] This is because "an employee or contractor assumes all the usual and ordinary hazards of his business and is bound to use skill and diligence to protect himself. He also assumes any special risk which is known to him or which is so obvious that a reasonably prudent man would observe and appreciate it."[7]

Here, the latent defect associated with the rubber catching fire was unknown to Mitchell. Thus, Long Leaf, which admittedly knew that the substance would burn, was required to inform him of the danger.[8] Long Leaf could have satisfied its duty by notifying Mitchell's employer, Lyle, of the risk,[9] and there is evidence that it did so. But there is also evidence that Long Leaf's representatives repeat-

---

[4] See *Howell v. Farmers Peanut &c.*, 212 Ga. App. 610, 611 (1) (442 SE2d 904) (1994).

[5] (Punctuation omitted.) Id.

[6] See *Seagraves v. ABCO Mfg. Co.*, 118 Ga. App. 414, 418 (2) (164 SE2d 242) (1968).

[7] (Citations omitted.) Id.

[8] Id. at 418-419 (defendant knew of latent defect associated with tank catching fire but failed to warn welder of the danger).

[9] See *Douberly v. Okefenokee Rural Elec. Membership Corp.*, 146 Ga. App. 568, 570 (2) (246 SE2d 708) (1978).

edly reassured Mitchell that it was safe to use the plazmark inside the tank because the rubber coating was not flammable. Accordingly, even if the jury believed Lyle was warned of the danger, it could also have found that Long Leaf's repeated negligent misrepresentations to Mitchell vitiated the company's attempt to satisfy its duty by warning Lyle.[10] Considering the latent nature of the defect, and evidence of Long Leaf's misrepresentations to Mitchell, it was for a jury to determine whether Long Leaf was liable to the Mitchells for failing to warn William Mitchell that the rubber coating would burn.[11] Accordingly, the trial court properly denied Long Leaf's motion for directed verdict.[12]

2. Although the trial court properly refused to grant a directed verdict to Long Leaf, we agree with the defendant that the court's jury instructions necessitate a new trial. The record shows that the court charged the jury on plaintiffs' request to charge no. 4 by instructing that

> [a]n owner having work done on his premises by an independent contractor, when that owner has actual or constructive knowledge of potential dangers on the premises, owes a duty to the contractor as a business invitee to give warning of or use ordinary care to furnish protection against such dangers to the contractor and his employees who are without actual or constructive notice of the dangers and which could not be discovered by them in the exercise of ordinary care.

Almost immediately upon retiring to the jury room, the jurors sent a note to the court asking: "How is a contractor defined? Is it [sic] the company to include the individual or just the company head?" Counsel for both parties apparently believed that the question concerned the court's charge on plaintiffs' request no. 4, and the court responded by repeating the charge to the jury. Long Leaf objected, arguing that the recharge did not explain to the jurors that an owner can discharge its duty to warn of defects by warning the contractor and that, under such circumstances, there would be no duty to notify each of the contractor's employees.[13] The trial court rejected counsel's request to clarify the issue for the jury.

When a jury requests clarification on a specific point, the trial

---

[10] *Seagraves*, supra at 417 (ruling that landowner could be held liable for negligently misinforming welder of risk).

[11] See id. at 419.

[12] See id.; *Crump*, supra.

[13] Contrary to the Mitchells' argument, Long Leaf timely preserved its objection to the recharge by raising it before the jury returned its verdict. See *Vaughn v. Protective Ins. Co.*, 243 Ga. App. 79, 81 (1) (532 SE2d 159) (2000).

court should reply "by providing a correct statement of the law *that responds to the jury's request*."[14] In this case, the court's initial charge and recharge were accurate statements of the law under *McFadden Business Publications v. Guidry*.[15] As stated in the charge, *Guidry* provided that an owner has a duty to either make the premises safe or warn "the contractor *and* his employees who are without actual or constructive notice of the dangers."[16] Although this is a correct statement of the law, we believe that its use as a jury instruction in this case, without clarification, likely created confusion.

We note initially that the court's recharge was unresponsive to the jury's question concerning the definition of a contractor. Furthermore, it appears, as argued by counsel for both parties at trial, that the question concerned the court's charge on Long Leaf's duty to warn a contractor about defects. Yet, the court merely restated the charge that likely caused the confusion in the first place. That charge, at first glance, appears to require an owner to notify *both* a contractor and its employees of a defect. This is not the law, however, because "[f]ull knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees."[17] The jury was never informed of this legal principle, and we do not know whether it based its verdict on the fact that, notwithstanding Lyle's knowledge, Long Leaf failed to discharge its duty because it never warned Mitchell of the danger. Furthermore, under *Guidry*, an owner is required to warn both the contractor *and* his employees only if they have no actual or constructive notice. The court's instructions, however, did not inform the jury about the meaning of constructive notice or how Mitchell could be charged with such notice. Inasmuch as the true basis of Long Leaf's liability was its superior knowledge of the defect,[18] it was essential that the trial court clearly instruct the jurors of the different means that the owner could satisfy its duties to the contractor, Lyle, and his employee, Mitchell. As evidenced by the jury's question and the court's recharge to the jury, this was not accomplished.[19] Accordingly, a new trial is required.[20]

3. Because Long Leaf's two other assertions of error concern issues that might arise on retrial, we address them briefly here.

(a) Long Leaf asserts that the trial court erred in admitting evi-

---

[14] (Emphasis in original.) *Hartman v. Shallowford Community Hosp.*, 219 Ga. App. 498, 500 (2) (466 SE2d 33) (1995) (physical precedent only).

[15] 177 Ga. App. 885, 888 (2) (341 SE2d 294) (1986).

[16] (Punctuation omitted; emphasis supplied.) Id.

[17] (Punctuation omitted.) *Douberly*, supra at 570 (2).

[18] *West v. Briggs & Stratton Corp.*, 244 Ga. App. 840, 844 (536 SE2d 828) (2000).

[19] See *Hartman*, supra at 501.

[20] See id. at 500.

dence of violations under the Occupational Safety & Health Act ("OSHA")[21] because Mitchell was not Long Leaf's employee. Although evidence of OSHA violations under these circumstances does not establish negligence per se,[22] we have held that evidence of nonconformity with OSHA standards is admissible as proof of a landowner's superior knowledge of a defect under OCGA § 51-3-1.[23]

(b) Long Leaf also asserts that the trial court erred in awarding prejudgment interest under Georgia's Unliquidated Damages Interest Act[24] because the Mitchells' demand letter was addressed only to Long Leaf's insurer. The letter indicates, however, that it was also sent to Long Leaf, via certified mail. Thus, contrary to Long Leaf's assertion, our decision in *Resnik v. Pittman*[25] would not preclude an award of prejudgment interest on this ground.

*Judgment reversed and remanded. Johnson, P. J., and Ellington, J., concur.*

DECIDED NOVEMBER 7, 2001 — 

*Lokey & Smith, Malcolm Smith,* for appellant.
*Gammon & Anderson, W. Wright Gammon, Jr., Brad J. McFall,* for appellees.

---

[21] See 29 USC § 651 et seq.
[22] See *Johnson v. Kimberly Clark,* 233 Ga. App. 508, 512 (504 SE2d 536) (1998); *Brantley v. Custom Sprinkler Systems,* 218 Ga. App. 431, 432 (1) (461 SE2d 592) (1995); *Dupree v. Keller Indus.,* 199 Ga. App. 138, 142 (1) (404 SE2d 291) (1991).
[23] See *Johnson,* supra at 511-512.
[24] OCGA § 51-12-14.
[25] 203 Ga. App. 835 (418 SE2d 116) (1992) (reversing award of prejudgment interest because letter was sent only to insurance company and it was "uncontroverted that appellee did not . . . send a copy . . . to appellant").
[1] Gadson was tried and found guilty on January 26, 1993. On December 1, 1997, the trial court granted him leave to file an out-of-time motion for new trial. An order denying Gadson's motion for new trial was entered on February 23, 2001.