A06A2439. McKINNEY v. REGENTS OF THE UNIVERSITY SYSTEM OF GEORGIA et al.
(643 SE2d 736)

RUFFIN, Judge.

David M. McKinney, an employee of LF Pipeline, was seriously injured when the jackhammer he was operating struck an electrical line. He brought a negligence action against the Regents of the University System of Georgia ("Board of Regents"), Turner Construction Company and E. R. Mitchell Construction, Inc. d/b/a Turner Mitchell Joint Venture ("Turner/Mitchell"), and Mark Henderson, Incorporated ("Henderson"). The trial court granted the defendants' motion for summary judgment and McKinney appeals. We affirm, for reasons that follow.

" 'Summary judgment is proper where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law.' "[1] A defendant is entitled to summary judgment if he can demonstrate "an absence of evidence on at least one essential element of the plaintiff's case."[2] A de novo standard of review applies to a grant of summary judgment, and we view the evidence in a light most favorable to the nonmovant.[3]

Viewed favorably to McKinney, the evidence shows that on May 6, 1996, the Board of Regents entered into a construction management agreement with Turner/Mitchell for the construction of a parking deck and student center on the Georgia State University campus. On January 8, 1997, Turner/Mitchell and Henderson entered into a subcontract wherein Henderson agreed to provide the electrical work for the project. Henderson installed an electrical conduit encased in concrete more than four feet underground.

---

[1] *Whitley v. H & S Homes, LLC*, 279 Ga. App. 877 (632 SE2d 728) (2006).

[2] *Garrett v. Hanes*, 273 Ga. App. 894 (616 SE2d 202) (2005).

[3] See *Whitley*, supra.

Atlanta Gas Light arranged for LF Pipeline to lay the pipe for the gas line at the construction site. Fred Kirby was Henderson's electrical superintendent for the project. Kirby testified that, on the day of the incident, he met with three men from LF Pipeline, including McKinney and another person he believed to be the job foreman for LF Pipeline.[4] Kirby showed the men the precise location of the electrical conduit and explained that it was encased in concrete.[5] He did not know that the men intended to use a jackhammer until after the incident.

Ricky Jackson, the LF Pipeline supervisor for the project, recalls meeting with McKinney, two other men, and a man that Jackson believed was the superintendent for the water company or the plumbing contractor. According to Jackson, the superintendent told them that the power cables were encased in concrete and ran from the transformer box to the building. Jackson recalls that although McKinney was present during the conversation with the superintendent regarding the utility lines, McKinney "[was not] listening." However, Jackson also stated that he specifically told McKinney that there were power lines encased in concrete in the area in which McKinney dug.

During his deposition, McKinney testified that he walked around the job site with his crew, Ricky Jackson, and a superintendent.[6] The superintendent told them that there were power lines running from the road to the transformer box. McKinney stated that no one told him that there were electrical lines — encased in concrete or otherwise — running from the transformer to the building and that if he had known that there were electrical lines in that area, he would not have dug until the lines had been located.

McKinney and his crew decided to use the jackhammer to get through the concrete footing wall. McKinney recalls that the superintendent responded, "okay," when McKinney told him that he intended to "[use] the jackhammer to get up under the wall." Approximately five minutes after he began operating the jackhammer, it hit an electrical line, and McKinney sustained an electric shock, resulting in second and third degree burns below McKinney's waist, on his hands, and on one elbow.[7]

---

[4] Kirby was not able to identify the LF Pipeline foreman by name.

[5] The electrical lines running underground from the transformer box to the building – in the area where McKinney's jackhammer made contact with the lines – were not marked on the surface.

[6] McKinney does not know who employed the superintendent.

[7] According to Kirby, the jackhammer went through approximately eight to nine inches of the concrete bank before it hit the electrical line.

McKinney filed suit against the defendants, alleging that they negligently failed to mark the location of the underground power lines, to notify him of the existence of the lines, and to keep the worksite safe. The defendants moved for summary judgment on several grounds, including that they owed no duty to McKinney to warn of the electrical lines, that McKinney caused his own injury by changing the nature of the premises, and that any duty of the defendants to warn of the buried electrical lines was discharged by LF Pipeline's knowledge of the hazard. Following oral argument, the trial court granted summary judgment to the defendants, essentially concluding that they were not liable to McKinney because his supervisor had been adequately notified about the location of the buried electrical duct bank.

1. McKinney contends that the trial court erred in granting summary judgment. We disagree. Negligence requires a showing that the defendants owed a duty to plaintiff that they then breached, causing plaintiff harm.[8] Pretermitting whether the defendants owed any duty to McKinney or whether McKinney changed the condition of the premises, rendering it unsafe, any duty imposed upon the defendants was discharged by virtue of Jackson's knowledge of the existence and location of the electrical conduit.[9]

In *Douberly*,[10] a logger sustained serious electrical burns when a tree he felled struck a power line. He sought recovery against the landowner, alleging that the owner breached its duty to warn him of the existence of the power line.[11] Because there was unrefuted evidence that the logger's employer was informed of the location and existence of the power line, including the employer's admission that he had actual knowledge, we affirmed the trial court's grant of summary judgment to the landowner.[12] Thus, "[t]here [was] no question as to the adequacy of the warning. Full knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees."[13]

Here, McKinney's supervisor, Jackson, specifically admits that he was informed of the existence and location of the power line. Thus, assuming that the defendants owed McKinney a duty to warn of the buried electrical conduit, such duty was discharged once LF Pipeline

---

[8] See *Hodges v. Putzel Elec. Contractors*, 260 Ga. App. 590, 594-595 (2) (580 SE2d 243) (2003).

[9] See *Douberly v. Okefenokee &c. Corp.*, 146 Ga. App. 568, 569-570 (2) (246 SE2d 708) (1978).

[10] See id. at 568-569.

[11] See id. at 569.

[12] See id. at 569-570.

[13] (Punctuation omitted.) Id. at 570.

had actual knowledge of the power lines.[14] And, although there are different accounts regarding who informed Jackson, such discrepancy does not alter the fact that Jackson had actual knowledge of the hazard. The source of the warning is immaterial, as the sole issue is whether LF Pipeline had knowledge of the electrical lines.[15]

Notwithstanding McKinney's argument to the contrary, the superintendent's reply of "okay" after McKinney told him they were going to use a jackhammer does not render summary judgment improper.[16] Having informed LF Pipeline of the existence of the electrical lines, the superintendent was not required to further instruct how to do the job or of the risks inherent in the use of its equipment. Furthermore, McKinney's denial — contrary to Jackson's testimony — that Jackson told him there were electrical lines in the area he was digging is "neither relevant nor material to the issue of [the defendants'] duty to [McKinney]" and "is not a genuine issue of material fact that will preclude summary judgment."[17]

Finally, we reject McKinney's argument that the cases cited by the trial court — *Douberly* and *Brown* — are inapplicable to the instant case because they involved open and obvious hazards, while the instant case involved a hidden dangerous defect. There is nothing in the language of these cases to suggest that their holdings are restricted to only those cases involving open and obvious dangers, and we decline to impose such a limitation.[18]

Thus, because any duty the defendants had to warn McKinney of the buried electrical lines was satisfied by notice to McKinney's supervisor, the trial court properly granted summary judgment to the defendants.[19]

2. McKinney also maintains that, notwithstanding Jackson's knowledge of the location of the electrical lines, the defendants had a separate duty to install red magnetic warning tape above the elec-

---

[14] See id.; see also *Long Leaf Indus. v. Mitchell*, 252 Ga. App. 343, 344 (1) (556 SE2d 242) (2001) (owner can satisfy its duty to warn someone working on its premises of a hazard by notifying the worker's employer); *Brown v. American Cyanamid &c. Corp.*, 372 FSupp. 311, 316 (S.D. Ga. 1973) (" 'While an owner owes a duty to employees of an independent contractor to take reasonable precautions to protect them from hidden dangers on the premises or to warn them thereof, an adequate warning to or full knowledge by this independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees.' ").

[15] See *Douberly*, supra.

[16] Compare *Long Leaf*, supra at 343-345 (where premises owner notified injured welder's employer of a risk, but also repeatedly reassured the welder that a particular material was not flammable, summary judgment was properly denied).

[17] *Douberly*, supra at 570.

[18] See id.; *Brown*, supra.

[19] See *Douberly*, supra.

trical bank and that their failure to do so caused McKinney's injuries.[20] There is conflicting testimony regarding whether red tape was installed in the area where McKinney dug. However, this evidentiary conflict does not preclude summary judgment.

McKinney maintains that industry standards require the installation of red magnetic warning tape, but offers no support for this proposition. In fact, Henderson's lead electrician testified that magnetic warning tape was not required when the conduit was encased in concrete, as in this case. Further, McKinney points to no contractual obligation on the part of the defendants to install the warning tape.

McKinney asserts that the job specifications for the project required the installation of warning tape. McKinney does not, however, point to copies of these job specifications in the record. Instead, he cites the deposition testimony of Kirby, Henderson's supervisor, to support his assertion that the job specifications required installation of the red warning tape:

Q: And tell me what the purpose of the red magnetic tape is.
A: For the utility locator to find what's in the ground there.
Q: So if he went —
A: Or they could do it without the tape.
Q: But the tape assists.
A: The tape is spec[ifi]ed in the specs.

This testimony is inconclusive, at best, as it is not clear that Kirby was referring to the job specifications for the project at issue. As McKinney has failed to demonstrate that defendants had a duty to install red magnetic warning tape, the trial court did not err in granting summary judgment as to his negligence claims.

Moreover, even assuming that the job specifications required installation of magnetic warning tape, the defendants' failure to install it does not make them liable for McKinney's injuries, given Jackson's knowledge of the lines. The purpose of the red magnetic tape is to indicate the location of buried electrical lines. As set forth in Division 1, McKinney's supervisor had actual knowledge of the location and existence of the electrical lines and, thus, any duty of the defendants to warn McKinney of the buried conduit was satisfied by McKinney's supervisor's actual knowledge thereof.[21]

*Judgment affirmed. Smith, P. J., and Phipps, J., concur.*

---

[20] Red magnetic warning tape has a metal backing that can be located with metal detectors and is installed approximately six to eight inches above the electrical lines or duct bank. According to Henderson's lead electrician for the project, it is normally used when the lines are not encased in concrete.

[21] See *Douberly,* supra at 570.

DECIDED FEBRUARY 8, 2007 —
RECONSIDERATION DENIED MARCH 19, 2007 — 

*Clifford E. Alexander*, for appellant.

*Thurbert E. Baker, Attorney General, Drew, Eckl & Farnham, Stevan A. Miller, Jeffrey A. Burmeister, Carter & Ansley, Lisa R. Richardson, Keith L. Lindsay*, for appellees.