**June 28, 2017**

# In the Court of Appeals of Georgia

A17A0321. LAW et al. v. CHEMTALL, INC.

MERCIER, Judge.

Michael Law and his wife, Kristin Law, appeal the trial court's order granting a directed verdict to Chemtall, Inc. ("Chemtall"). The underlying facts of this case are undisputed. Chemtall operates a chemical plant. In August 2011, Chemtall contracted with Daybreak Insulation,Inc. ("Daybreak"), to work on an insulation project in an area of Chemtall known as the "tank farm." Michael Law (hereinafter "Law") was an employee of Daybreak and was assigned to work on the insulation project in the tank farm. On August 30, 2011, while working on the project, Law descended a scaffolding ladder and stepped in a puddle of liquid that he thought was water. He slipped and the liquid splashed onto his leg. Law testified that he had walked through the puddle "all day" and for several days before the incident. Law stated that he had "encountered the

puddle the whole time we was [sic] in there." After the liquid splashed on him, Law walked to a break room and began eating his lunch. About 10 to 15 minutes later, he began experiencing a burning sensation in his leg. He went to a water spigot and began washing his leg. Law told a supervisor what happened. The supervisor told Law to wash off in the shower, and Law complied. He sought medical treatment the next day.

The chemical sodium hydroxide was present at the worksite, and Chemtall had placed a sign advising workers that sodium hydroxide was present and hazardous. The puddle in which Law had slipped was sodium hydroxide, and as a result of his contact with the chemical, Law suffered severe chemical burns on his leg. Law testified that he knew that if a pipe at a chemical plant leaked, a worker could be exposed to chemicals. He also understood that if he was exposed to chemicals, specifically if chemicals got on his skin, he could be harmed. Law had also undergone safety training, and had been instructed that if he was exposed to a chemical, he "needed to go to the shower area and wash it off."

The Laws filed suit alleging negligence on the part of Chemtall. Chemtall filed a motion for summary judgment, but the trial court did not rule on the motion. The case was called for trial in November 2015. At the conclusion of the Laws' case-in-chief, Chemtall made a motion for directed verdict, asserting that Chemtall fulfilled its

duty to warn the independent contractor of the hazards. The trial court granted the motion. In their sole enumeration of error, the Laws contend that the trial court erred in granting Chemtall's motion for directed verdict. The contention is without merit.

"[A] directed verdict is appropriate only if there is no conflict in the evidence as to any material issue and the evidence introduced, construed most favorably to the party opposing the motion, demands a particular verdict." *St. Paul Mercury Ins. Co. v. Meeks*, 270 Ga. 136, 137 (1) (508 SE2d 646) (1998) (citations omitted). "In reviewing the grant of a motion for a directed verdict, this Court applies the 'any evidence' test and construes the evidence in the light most favorable to the losing party." *Cottrell v. Smith*, 299 Ga. 517, 518 (1) (788 SE2d 772) (2016) (citation omitted).

In Georgia

[i]t is well settled that an owner or occupier of land is liable in damages to invitees who come upon his land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe. . . . Under this principle is found the duty of an owner of premises to an individual contractor and his employees who lawfully come upon the premises in the performance of a contract between the owner and the contractor because the independent contractor and his employees are invitees. Thus, an owner having work done on his premises by an independent contractor, who has actual or constructive knowledge of *potential dangers* on the premises, owes a duty to the contractor to give warning of, or use ordinary care to furnish protection against, such dangers to the

contractor and his employees who are without actual or constructive notice of the dangers, and which could not be discovered by them in the exercise of ordinary care.

*West v. Briggs & Stratton Corp.*, 244 Ga. App. 840, 844 (536 SE2d 828) (2000) (footnote and citation omitted, emphasis supplied). Further,

[a]lthough property owners owe a duty to their own invitees, they owe no such duty to employees of or others invited upon the premises by an independent contractor hired to do work on the premises if two conditions exist: 1) the owner has relinquished possession of the premises, in whole or in part and 2) the owner does not have the right and does not actually control or direct the work done.

*McClure v. Equitable Real Estate Investment Mgmt., Inc.*, 195 Ga. App. 54, 55 (392 SE2d 272) (1990) (citations omitted). Therefore, unless Chemtall met both prongs of the *McClure* test, it owed a duty to the independent contractor, Daybreak.

The record contains some evidence that Chemtall did not relinquish possession of the property. At the time of the incident, Chemtall had a "Process Safety, Health and Environmental Orientation Training Program Booklet" that it required contractors, such as Daybreak, to follow. The booklet states:

It is required that the *SNF Operations Manager* jointly with the *Contractor Working Supervisor Representative and the SNFHC Maintenance/Engineer Manager if involved, must be in the area where the* working activities are to be conducted; determine if acceptable

4

conditions exist to authorize and approve working activities or terminate them.[1]

(emphasis in original). "[P]ossession may be defined as having personal charge of or exercising the rights of management or control over the property in question." *West*, supra at 845. The requirement in the training program booklet that a Chemtall employee be in the area where the Daybreak employees were working suggests that Chemtall retained partial possession of the premises where Daybreak was working. Because Chemtall possibly retained possession of a portion of the premises, evidence exists that Chemtall did not meet one of the two prongs of the *McClure* test. "Only if both conditions [of the *McClure* test] are satisfied is the owner relieved of any duty toward invitees." *West,* supra at 846. As the evidence was in conflict regarding whether Chemtall relinquished possession of the property, the first prong of the *McClure* test was not satisfied. Thus, we need not consider the second prong of the *McClure* test.

While Chemtall was not relieved of its duty to Law under the *McClure* test, Chemtall was still entitled to a directed verdict because the evidence was undisputed that it discharged its duty. It is well settled that "[f]ull knowledge by [an] independent

---

[1]We note that Chemtall is referred to in some record documents as "SNF Chemtall" and "SNF Holding Company."

contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees." *McKinney v. Regents of the Univ. Sys. of Ga.*, 284 Ga. App. 250, 252 (1) (643 SE2d 736) (2007) (footnote and citation omitted). Evidence was indeed presented that Chemtall warned Daybreak of the potential chemical dangers present in the tank farm, such that Daybreak had full knowledge of the potential hazards. This included posting a sign concerning the presence and dangers of sodium hydroxide, and mandating that Daybreak give its employees a safety training program that informed employees of potential fire, explosion, and toxic release hazards at the worksite. In addition, the "Safe Work Permit" issued to Daybreak by Chemtall and signed by one of Daybreak's supervisors on the day of the incident stated that

> The contractor has performed its daily inspection and has evaluated and assured that their employees know and will follow the safety rules and safe-work practices of the facility and the contractor will advise the facility manager of any unique hazards presented by or hazards found during the contractor's work.

Notably, contrary to the dissent's assertion that Chemtall's training program booklet ("contractor safety manual") did not mention the presence of puddled or standing chemicals outside of storage tanks, the booklet did state: "Potential causes of Fire, Explosion, and Toxic Release incidents may be any one or a combination of the

6

following: Unintentional Spills/Releases." As noted above, Chemtall had placed a sign advising workers that sodium hydroxide was present and hazardous.

Additionally, Law had received training regarding chemicals that were present at Chemtall and their potential hazards. He knew that he was required to wear long pants because liquids could splash on him. Law also knew that there were hazardous chemicals on the site, and that if he was exposed to a chemical, he needed to wash off the chemicals. Furthermore, the evidence establishes that Law himself had prior knowledge of the puddle's existence.

The Laws failed to produce any evidence to demonstrate that Daybreak did not have full knowledge of the potential dangers presented in the tank farm. Thus, there is no conflict in the evidence as to this material issue, and when construed most favorably to the Laws, the evidence demands a verdict in favor of Chemtall. See *St. Paul Mercury Ins. Co.;* supra; *Cottrell,* supra. Although the trial court did not explicitly address this issue in its order, Chemtall raised the argument during the hearing on the motion for directed verdict and "the grant of a motion for directed verdict will be affirmed if right for any reason." *Kohler v. Van Peteghem*, 330 Ga.

7

App. 230, 239 (4) (767 SE2d 775) (2014). Accordingly, the judgment of the trial court granting a directed verdict in favor of Chemtall is affirmed.

*Judgment affirmed. Dillard, P. J., Andrews, Rickman, Self and Reese, JJ., concur. Barnes, P. J., Miller, P. J., and McMillian, J., Dissent.*

8

A17A0321. LAW et al. v. CHEMTALL INCORPORATED.

BARNES, Presiding Judge.

I agree with the majority's analysis and conclusion regarding Chemtall's duty to Law under the *McClure* test. However, the majority's analysis regarding Law's knowledge about the sodium hydroxide puddle, while persuasive, is not convincing, and thus, I must respectfully dissent. Although a close question, Chemtall was not entitled to a directed verdict because there was some evidence disputing whether Law possessed "full knowledge" of the potential chemical hazards at the tank farm. See *McKinney v. Regents of the Univ. Sys. of Ga.*, 284 Ga. App. 250, 252 (1) (643 SE2d 736) (2007). See generally *Chrysler Group, LLC v. Walden*, 339 Ga. App. 733, 735-736 (1) (792 SE2d 754) (2016) ("In considering a ruling on a motion for directed verdict, the evidence must be construed most favorably to the party opposing the motion.") (citation and punctuation omitted.) This was an issue of fact best determined by the jury. Indeed, because the jurors are "the sole and exclusive judges of the weight and credit given the evidence," we must construe the evidence with "every inference and presumption in favor of upholding the verdict, and after judgment, the evidence must be construed to uphold the verdict even where the evidence is in

conflict."(Punctuation and footnote omitted.) *Wood v. B & S Enterprises*, 314 Ga. App. 128, 135 (5) (723 SE2d 443) (2012).

Although "[f]ull knowledge by the independent contractor of the dangers should and will be held to discharge the landowner's alternative duty to warn the employees," *McKinney*, 284 Ga. App. at 252 (1), "[t]he knowledge requirement does not refer to a comprehension of general, non-specific risks. Rather, the knowledge that a plaintiff who assumes the risk must subjectively possess is that of the specific, particular risk of harm associated with the activity or condition that proximately causes injury." *Prillaman v. Sark*, 255 Ga. App. 781, 782 (567 SE2d 76) (2002). The evidence demonstrates that Chemtall placed a sign at the worksite advising workers of the presence of sodium hydroxide and its hazards. The evidence, however, does not conclusively establish that Daybreak and Law had full knowledge of, to the exclusion of Chemtall, the fact that sodium hydroxide might be puddled in various locations on the tank farm. Nor does the evidence conclusively establish that Law knew that the puddle he assumed was water, and had walked by on previous occasions, was sodium hydroxide. Indeed, Chemtall's contractor safety manual had an exhaustive list of potential hazards relative to where and what type of work was being performed, and

2

the presence of puddled or standing chemicals outside of storage tanks was not mentioned.

"The granting of a directed verdict is a grave matter as, in directing a verdict, the trial court takes the case away from the jury and substitutes its own judgment for the combined judgment of the jury."(Punctuation and footnote omitted.) *Kroger v. Strickland*, 248 Ga. App. 613, 613-614 (1) (548 SE2d 375) (2001).

Because I would find that the trial court erred in granting Chemtall's motion for directed verdict, I respectfully dissent.

I am authorized to state that Presiding Judge Miller and Judge McMillian join in this dissent.