**FIRST DIVISION
BARNES, P. J.,
GOBEIL and MARKLE, JJ.**

**NOTICE: Motions for reconsideration must be _physically received_ in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**_DEADLINES ARE NO LONGER TOLLED IN THIS COURT. ALL FILINGS MUST BE SUBMITTED WITHIN THE TIMES SET BY OUR COURT RULES._**

**June 30, 2021**

# In the Court of Appeals of Georgia

A21A0462. GEORGIA POWER COMPANY v. CAMPBELL et al.

MARKLE, Judge.

Colen Campbell developed mesothelioma after working as an insulator at the Edwin I. Hatch nuclear power plant in the 1970s. In 2017, he and his wife (collectively "the plaintiffs") sued Georgia Power Company, as the owner of the Hatch nuclear plant, alleging premises liability, loss of consortium, and punitive damages.[1] The trial court granted in part and denied in part Georgia Power's motion for summary judgment, limiting the claims to those arising from exposure to asbestos at the Hatch plant in 1973 to 1974. The trial court also denied Georgia Power's motions to exclude the testimony of two of the plaintiffs' expert witnesses, Drs.

---

[1] They also named as defendants numerous other entities, all of whom were dismissed or were granted summary judgment. Only Georgia Power remains as a defendant.

Brody and Holstein, on the issue of causation. The trial court certified its orders for immediate review, and we granted interlocutory review. Georgia Power now appeals, arguing that the trial court erred in denying its motion to exclude the experts and by denying in part its motion for summary judgment because (1) it owed no duty to Campbell, as it had ceded possession and control over the plant; (2) the expert testimony was not admissible under OCGA § 24-7-702, and, in the absence of any expert testimony, the plaintiffs failed to establish causation; and (3) the statute of repose in OCGA § 9-3-51 bars all claims. After a thorough review of the record, we affirm the trial court's order admitting Dr. Brody's expert testimony and denying summary judgment with regard to Georgia Power's duty to Campbell; we vacate the trial court's orders admitting Dr. Holstein's expert testimony and denying in part the motion for summary judgment as to the statute of repose issue; and we remand the case for further proceedings.[2]

"On appeal from a trial court's grant or denial of summary judgment, our review of the record is de novo, and we construe the facts and all inferences drawn

[2] See *An v. Active Pest Control South*, 313 Ga. App. 110, 116-117 (720 SE2d 222) (2011) (where trial court did not decide defendant's motions challenging the admissibility of experts' opinions, and testimony was dispositive of questions raised on summary judgment, trial court erred by not deciding admissibility before granting summary judgment).

2

from them in the light most favorable to the nonmoving party." (Citation and punctuation omitted.) *Centurion Indus., Inc. v. Naville-Saeger*, 352 Ga. App. 342, 343 (834 SE2d 875) (2019).

So viewed, the record shows that Campbell was a member of the insulators union and worked for several insulating companies including North Brothers starting in 1965. In the early-1970s, North Brothers contracted with Georgia Power to handle the removal and installation of insulation at the Hatch nuclear power plant, and Campbell was assigned to the job.

As part of Campbell's work at the Hatch plant, he used insulation and materials containing asbestos, and he was exposed to asbestos via dust particles as he removed existing insulation. During the time he worked at the Hatch plant in the mid-1970's, Campbell was not provided with any safety gear, nor was he told to wear a mask while around the insulation dust.[3]

After he was diagnosed with mesothelioma, Campbell and his wife filed at least one other suit arising from exposure to asbestos before filing the instant suit. In

---

[3] Campbell would return to work at the plant in later years, and in those jobs he either did not work with asbestos products or he was given safety gear and masks for protection. These jobs are not a part of his premises liability claim, and Campbell admitted that by 1975 he knew asbestos was hazardous.

support of their claims here, and to establish that the asbestos at the Hatch plant caused Campbell's illness, the plaintiffs submitted expert testimony from Drs. Kradin, Brody, and Holstein. Georgia Power sought to exclude these experts on the grounds that they lacked the proper qualifications to render expert opinions; their testimony was not relevant; and their theories and methods were unreliable. They also moved for summary judgment, arguing that they did not owe Campbell any duty because he was North Brothers's employee; Campbell failed to establish causation; and the claims were barred by the statute of repose in OCGA § 9-3-51.

Following a set of hearings, the trial court excluded Dr. Kradin's testimony, but admitted Dr. Holstein's testimony, and allowed Dr. Brody to testify only to general causation issues.[4] It then granted in part and denied in part the motion for summary judgment, limiting Campbell's claims to those arising from exposure at the Hatch plant between 1973 and 1974. The trial court issued a certificate of immediate review, and we granted the application for interlocutory review. This is Georgia Power's appeal.

---

[4] The plaintiffs have not filed a cross-appeal from the trial court's orders excluding Dr. Kradin's testimony or from the partial grant of summary judgment.

1. In its first enumeration of error, Georgia Power argues that it was entitled to summary judgment because it owed no duty to Campbell under *McClure v. Equitable Real Estate Investment Management, Inc.*, 195 Ga. App. 54 (392 SE2d 272) (1990), once it relinquished control and possession of the plant to North Brothers. It contends that the plaintiffs failed to raise a question of fact regarding its possession and control, and it notes that North Brothers, as a sophisticated contractor, was aware of the dangers of asbestos prior to the dates of Campbell's alleged exposure at the Hatch plant. We conclude that the trial court properly found that there were questions of fact that precluded summary judgment.

In Georgia

[i]t is well settled that an owner or occupier of land is liable in damages to invitees who come upon his land for injuries occasioned by his failure to exercise ordinary care in keeping the premises safe. . . . Under this principle is found the duty of an owner of premises to an individual contractor and his employees who lawfully come upon the premises in the performance of a contract between the owner and the contractor because the independent contractor and his employees are invitees. Thus, an owner having work done on his premises by an independent contractor, who has actual or constructive knowledge of potential dangers on the premises, owes a duty to the contractor to give warning of, or use ordinary care to furnish protection against, such dangers to the contractor and his employees who are without actual or constructive

5

notice of the dangers, and which could not be discovered by them in the exercise of ordinary care.

(Citation and punctuation omitted.) *West v. Briggs & Stratton Corp.*, 244 Ga. App. 840, 844 (536 SE2d 828) (2000).

In the context of an invitee who is an independent contractor, we have set out a two-prong test under *McClure*, 195 Ga. App. at 55, to establish the property owner's liability. As we explained,

[a]lthough property owners owe a duty to their own invitees, they owe no such duty to employees of or others invited upon the premises by an independent contractor hired to do work on the premises if two conditions exist: 1) the owner has relinquished possession of the premises, in whole or in part and 2) the owner does not have the right and does not actually control or direct the work done.

(Citation omitted.) *Law v. Chemtall*, 342 Ga. App. 374, 376 (802 SE2d 408) (2017); see also *McClure*, 195 Ga. App. at 55. Therefore, Georgia Power owed a duty to Campbell, as an employee of the independent contractor, only if Campbell could show that Georgia Power met both prongs of the *McClure* test. Notably, although there is some overlap in the relevant facts, retaining control over the work and

6

relinquishing possession of the premises are two distinct questions. *West*, 244 Ga. App. at 846.

In deciding this question, we are mindful that "[t]he 'routine' issues of premises liability, i.e., the negligence of the defendant and the plaintiff, and the plaintiff's lack of ordinary care for personal safety are generally not susceptible of summary adjudication, and summary judgment is granted only when the evidence is plain, palpable, and undisputed." (Citation omitted.) *Mullinax v. Pilgrim's Pride Corp.*, 354 Ga. App. 186, 196 (3) (a) (840 SE2d 666) (2020). With these standards in mind, we turn to the merits of the *McClure* test.

"Possession" is defined as "having personal charge of or exercising the rights of management or control over the property in question." (Citation omitted.) *Law*, 342 Ga. App. at 376. In other words, the focus is on custody and control, and generally includes the "ability to control access to the premises and exclude others therefrom." *West*, 244 Ga. App. at 846. And, under our case law, the owner does not have to relinquish control over the entire property; it is sufficient if the owner surrenders possession and control over some portion of the property. See *Hess v. Textron Automotive Exteriors*, 245 Ga. App. 264, 265 (2) (536 SE2d 291) (2000); see also *Mullinax*, 354 Ga. App. at 198 (3) (b).

7

Here, the contract between Georgia Power and North Brothers specified that: North Brothers (a) provided all supervision, workers, and materials to install the insulation; (b) maintained safe conditions and adhered to all applicable safety laws and any of Georgia Power's other regulations; (c) indemnified Georgia Power from any claims, including injury or wrongful death, arising from the work; (d) was required to have a foreman or supervisor on site to handle any issues that arose and to use skilled and qualified workers; and (e) gave the workers their assignments, trained them, provided materials for the job, supervised them, paid them, and controlled the work. As to Georgia Power, the contract provided that it would (a) determine the type of materials to be used, and modifications were not permitted without its approval; (b) retain the right to have its inspectors review the work and to establish rules and regulations for performance and safety; (c) have the right to "designate the space to be occupied by the several Contractors, and to supervise the use of all space at all times during the progress of the work;" (d) retain the right to have workers dismissed if the work was substandard; and (e) have its employees oversee the insulators and control their access to the work site. In addition, the contract between Georgia Power and North Brothers required Georgia Power to keep a copy of all purchase orders, that all materials be sent to its representatives, and that

8

North Brothers' foreman would requisition needed materials from Georgia Power. Georgia Power issued instructions for handling materials as part of its quality assurance program. North Brothers was required to report to Georgia Power's superintendent before beginning work, at the time of any temporary suspension, and again at the completion of the work, as well as whenever a subcontractor began or ended work; and it submitted its employees' time sheets to Georgia Power for approval. Georgia Power further required workers to have chest x-rays and radiation counts taken before they could begin working at the nuclear plant. Campbell also testified that the workers were required to abide by any safety requirements of the specific job site, and that Georgia Power controlled their access to the work site.

Given this evidence, we conclude that factual questions remain as to whether Georgia Power relinquished possession of the premises and control of the insulation work to North Brothers. See *Law*, 342 Ga. App. at 376; see also *Mullinax*, 354 Ga. App. at 198 (3) (b) (fact question about whether the owner relinquished possession); *Ramcke v. Ga. Power Co.*, 306 Ga. App. 736, 739-740 (3) (703 SE2d 13) (2010) (to be liable, owner must have ability to direct the time or manner of the work done, but it is not sufficient that owner can, under contract, inspect the work to ensure compliance or stop the work if it was not in compliance); *Johnson v. Kimberly Clark*,

9

233 Ga. App. 508, 510-511 (504 SE2d 536) (1998) (factual question over possession where premises owner required one of its employees to be present in any area in which the contractor was working); compare *King v. Midas Realty Corp.*, 204 Ga. App. 590 (420 SE2d 62) (1992) (terms of contract showed owner relinquished possession and control, and the right to require certain results under the contract was insufficient to find that premises owner had not relinquished control); *Modlin v. Swift Textiles*, 180 Ga. App. 726 (350 SE2d 273) (1986) (provisions in contract showed that premises owner relinquished control); *Bryant v. Village Centers*, 167 Ga. App. 220, 222 (1) (305 SE2d 907) (1983) (same).[5] Accordingly, the trial court properly denied Georgia Power's motion for summary judgment on this claim.

2. Georgia Power next argues that the trial court erred in denying its motions to exclude expert testimony from Drs. Brody and Holstein, and, in the absence of

---

[5] We note that Georgia Power may still be entitled to summary judgment if it can show that North Brothers and Campbell had full knowledge of the dangers of the asbestos, *Law*, 342 Ga. App. at 377, or if it can show that Campbell could have discovered those dangers in the exercise of ordinary care, *West*, 244 Ga. App. at 844. Although Georgia Power argued in the trial court that Campbell had equal knowledge of the hazard, it does not raise that argument on appeal. Nor does it argue on appeal that it was entitled to summary judgment because the inherent nature of demolition itself created the hazard. See *Elsberry v. Ivy*, 209 Ga. App. 620, 621 (2) (a) (434 SE2d 158) (1993). Thus, we do not consider these arguments. *West*, 244 Ga. App. at 847, n. 17.

such testimony, the plaintiffs failed to establish causation because Campbell did not show that he worked with asbestos during the relevant time period. We conclude that the trial court properly admitted Dr. Brody's testimony, but did not fulfill its role as a gatekeeper with regard to Dr. Holstein's testimony, and thus we must vacate the trial court's order admitting that testimony, and remand for further proceedings.

In addition to establishing exposure to a toxic chemical, "a plaintiff must offer proof of general causation—that exposure to a substance is capable of causing a particular injury or disease—and proof of specific causation—that exposure to a substance under the circumstances of the case contributed to his illness or disease." *Fouch v. Bicknell Supply Co.*, 326 Ga. App. 863, 868 (1) (756 SE2d 682) (2014); see also *Butler v. Union Carbide Corp.*, 310 Ga. App. 21, 25 (1) (712 SE2d 537) (2011).

(a) *Causation testimony*.

To establish proximate causation, Campbell must show that he was exposed to an asbestos-containing product at Georgia Power's plant, and he may meet this burden through his own testimony. See *Davis v. John Crane.*, 353 Ga. App. 243, 245 (1) (836 SE2d 577) (2019); cf. *Hoffman v. AC&S*, 248 Ga. App. 608, 610-611 (2) (548 SE2d 379) (2001) (plaintiff must show proximate cause, that is, that asbestos products were in use and that he was exposed to them).

In his depositions, Campbell alleged that he used asbestos products in his work at the Hatch plant insulating tanks and pipes, and that he breathed in the asbestos dust. He stated that the boxes of insulation were marked as containing asbestos. See *Davis*, 353 Ga. App. at 244 (1) (plaintiff can meet his burden to show asbestos products were used through his own testimony). Georgia Power's representative acknowledged in her testimony that the contract specified asbestos materials would be used in the insulation projects. She further acknowledged that asbestos exposure could cause disease and that Georgia Power was aware of that link in the early 1970s. This testimony and evidence was sufficient to survive summary judgment.

(b) *Expert causation testimony*.

"Causation is an essential element of a toxic tort case, and proof of causation in such cases generally requires reliable expert testimony." (Citation and punctuation omitted.) *Cleveland v. Sentinel Ins. Co.*, 354 Ga. App. 795, 798 (1) (840 SE2d 738) (2020). To establish the necessary causation to support their claim, the plaintiffs had to establish that exposure to asbestos at the Hatch plant was "a contributing factor in bringing about [Campbell's] mesothelioma." *Scapa Dryer Fabrics, Inc. v. Knight*, 299 Ga. 286, 290-291 (788 SE2d 421) (2016). As our Supreme Court explained,

12

[w]e previously have rejected the notion that the contribution to the resulting injury must be substantial to show legal causation. At the same time, however, we cautioned that a de minimis contribution is not enough. Put another way, although [Campbell] did not have to prove that exposure to asbestos [Hatch plant] made a substantial contribution to his mesothelioma, [he] did have to show that it made a meaningful contribution. . . . [A] de minimis contribution to an injury is not sufficient to establish legal causation under Georgia law.

(Citations omitted.) Id. at 290-291. Thus, the plaintiffs had to show that the exposure made a "meaningful contribution" to Campbell's illness. Id. at 290-291.

In this respect, the plaintiffs proffered testimony from Dr. Brody and Dr. Holstein. Georgia Power sought to exclude their testimony as irrelevant, cumulative, and unreliable, and as exceeding the scope of their expertise under OCGA §§ 24-4-402; 24-4-403; 24-7-702. The trial court found that Dr. Brody's testimony would be admissible for general causation, and Dr. Holstein could testify as to specific and general causation.[6]

---

[6] The trial court instructed the parties that it would allow only minimal overlap on the general causation testimony from Brody and Holstein.

13

Before we consider the admissibility of either expert, we first set out the relevant legal standard, noting that we review a trial court's decision to admit expert testimony for abuse of discretion. *Scapa Dryer Fabrics*, 299 Ga. at 289.

Under OCGA § 24-7-702, the trial court must act as "gatekeeper to ensure the relevance and reliability of expert testimony."[7] (Citation and punctuation omitted.) *Scapa Dryer Fabrics*, 299 Ga. at 289. To admit expert testimony under OCGA § 24-7-702, the trial court must consider: (a) the qualifications of the expert; (b) the reliability of the testimony; and (c) the relevance of the testimony. Id. In exercising its discretion and acting as gatekeeper, the trial court "assess[es] both the witness'

---

[7] The statute specifically provides:

If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education may testify thereto in the form of an opinion or otherwise, if: (1) The testimony is based upon sufficient facts or data; (2) The testimony is the product of reliable principles and methods; and (3) The witness has applied the principles and methods reliably to the facts of the case which have been or will be admitted into evidence before the trier of fact.

OCGA § 24-7-702 (b). We may consider federal cases in applying OCGA § 24-7-702. See OCGA § 24-7-702 (f).

14

qualifications to testify in a particular area of expertise and the relevancy and reliability of the proffered testimony." (Citation omitted.) *Wadley v. Mother Murphy's Laboratories*, 357 Ga. App. 259, 264 (1) (850 SE2d 490) (2020). "A trial court . . . abuses its discretion by failing to act as a gatekeeper." *McClain v. Metabolife Intl.*, 401 F3d 1233, 1238 (II) (11th Cir. 2005). With these standards in mind, we turn to Georgia Power's specific challenges.

(i) *Dr. Brody.*

The plaintiffs proffered Dr. Brody's testimony on the issue of general causation. Georgia Power moved to exclude his testimony on the grounds that it was duplicative and cumulative. The trial court allowed Brody to give limited testimony on the issue of general causation.

Georgia Power argues that it was error to allow both Drs. Brody and Holstein to testify to the same matters, as it would be duplicative and cumulative. Contrary to Georgia Power's argument, however, the trial court expressly limited Brody's testimony to general causation testimony, and excluded any specific causation opinion by that expert. We note that issues of general causation – that asbestos exposure causes mesothelioma – are not in dispute. Georgia Power raises no other challenge to the trial court's order with respect to the admission of Brody's opinion.

15

As a result, the trial court did not abuse its discretion in allowing Dr. Brody's limited testimony on general causation.

(ii) *Dr. Holstein*.

Georgia Power asserts that the trial court should have excluded Dr. Holstein's testimony because he was unqualified to give opinions as to: Campbell's fear of developing cancer; Georgia Power's knowledge of the risks; the duty of care; the failure to comply with asbestos regulations; what safety measures were or should have been used; and whether Georgia Power was liable for the failure to warn Campbell of the dangers, along with other legal conclusions. It further argues that (1) Holstein's methodologies were unreliable because he relied on the "any exposure" theory and lacked the facts necessary to form an opinion; and (2) Holstein failed to consider causation from other exposures.

In his deposition testimony, Dr. Holstein stated that he was board certified in internal and occupational medicine, and he was a member of the Mt. Sinai School of Medicine, although he no longer taught or treated patients. He had some training in industrial hygiene, and, through his consulting company, he had worked with companies running power plants to evaluate health hazards. He had been studying the health effects of asbestos, particularly with insulators, for almost 40 years. Holstein

16

opined that Campbell's illness was caused by the cumulative effects of all of his asbestos exposure, and that his work with asbestos at the Hatch plant "constituted a substantial factor in the causation of his malignant mesothelioma or . . . those exposures meaningfully contributed to the causation" of his illness. Holstein explained that he reached his conclusions based on Dr. Kradin's report and Campbell's depositions, as well as his experience studying, interviewing, and treating insulators and asbestos exposure. He estimated the quantity of fibers to which Campbell was exposed at the plant, as well as the amounts he was exposed to over the years from other sources. When asked, Holstein stated that Georgia Power knew or should have known of the risks of asbestos exposure as early as 1946 when Georgia passed an occupational health law, and that it had a duty to Campbell to keep the work site safe. Holstein admitted that he did not focus on other potential exposures for purposes of his testimony, and he did not make any differential diagnosis,[8] but he stated that it was "clear" that Campbell had been exposed to asbestos from his other

_____

[8] Differential diagnosis is a traditional method "by which a physician determines what disease process caused a patient's symptoms." *Shiver v. Ga. & Fla. Railnet*, 287 Ga. App. 828, 829 (1) (652 SE2d 819) (2007) (under old Evidence Code, finding that expert testimony was admissible despite the lack of a differential diagnosis). The physician does so by "consider[ing] all relevant potential causes of the symptoms and then eliminat[ing] alternative causes based on a physical examination, clinical tests, and a thorough case history." Id. at 829 (1).

17

jobs and as a child when his father worked as an insulator. Holstein acknowledged that he was not a lawyer and had only a lay person's understanding of a failure to warn claim, and he admitted that he had formed an opinion as to whether Campbell had experienced a fear of cancer.

In finding Holstein's testimony admissible, the trial court expressly found that Georgia Power had not raised an objection to Holstein's qualifications; thus, it did not evaluate his qualifications to give certain opinions, including whether Georgia Power was legally responsible to Campbell or whether it had failed to warn Campbell of the dangers. Contrary to the trial court's findings, however, our review of the record reveals that Georgia Power did challenge Holstein's qualifications to give such opinions. As a result, the trial court failed to exercise its discretion as gatekeeper. *Wadley*, 357 Ga. App. at 264 (1). We are thus obligated to vacate the trial court's order admitting Holstein's testimony, and remand the case for the trial court to analyze his qualifications. See *Lavelle v. Laboratory Corp. of America*, 327 Ga. App. 142, 147 (2) (755 SE2d 595) (2014) (we must vacate the trial court's order and remand for the trial court to exercise its role as gatekeeper where its order did not show that it performed this task). Because we remand on this basis, we do not reach the other challenges to Holstein's testimony.

18

3. Finally, Georgia Power argues that it was entitled to summary judgment because Campbell's claims were barred by the statute of repose.

Under OCGA § 9-3-51, there can be no recovery for injuries resulting from "any deficiency in the . . . specifications . . . or construction of an improvement to real property" that occurred more than 10 years "after the substantial completion of construction of such an improvement." OCGA § 9-3-51 (a), (b). There is no dispute that the insulation work at issue here constituted "an improvement to real property" or that the Hatch plant was completed more than 10 years before the plaintiffs filed their suit. See *Mullis v. Southern Co. Srvcs.*, 250 Ga. 90, 93-94 (4) (296 SE2d 579) (1982) (power plant's electrical system was improvement to real property); *Toole v. Georgia-Pacific*, No. A10A2179, 2011 WL 7938847, at *5-6 (5) (2011) (installation and removal of asbestos insulation materials is improvement to real property, and statute covers dust and debris associated with the installation and removal process) (unpublished).

Nevertheless, there is an exception to this statutory protection that precludes the use of the defense "by any person who would otherwise be entitled to its benefits but who is in actual possession or control, as owner, tenant, or otherwise, of such an improvement at the time any deficiency of such an improvement constitutes the

19

proximate cause of the injury or death for which it is proposed to bring an action." OCGA § 9-3-52. Importantly, the definition of "person" includes corporations and partnerships. OCGA § 9-3-50 (1).

Georgia Power raised this defense in its supplemental motion for summary judgment, but the trial court did not address this argument in its order denying in part the motion for summary judgment. As we are a court for the correction of errors, we decline to consider this issue in the first instance. *American Academy of Gen. Physicians v. LaPlante*, 340 Ga. App. 527, 529 (1) (798 SE2d 64) (2017); see also *Toole*, No. A10A2179, 2011 WL 7938847, at *7 (5). Accordingly, we remand this issue for the trial court to consider whether the statute of repose would bar Campbell's claims.

For the foregoing reasons, we affirm the trial court's order admitting Dr. Brody's testimony and denying summary judgment as to Georgia Power's duty to Campbell; we vacate the trial court's orders admitting Dr. Holstein's testimony and denying in part the motion for summary judgment as to whether the claims were barred by the statute of repose; and we remand the case for further proceedings consistent with this opinion.

*Judgment affirmed in part; vacated in part, and case remanded with direction.*

*Barnes, P. J., and Gobeil, J. concur.*